United States Court of Appeals,

Eleventh Circuit.

No. 95-9008

Non-Argument Calendar.

FEDERAL TRADE COMMISSION, Plaintiff-Appellee,

v.

GEM MERCHANDISING CORPORATION, a Georgia Corporation; Summit Medi-Alert, Inc., a Georgia Corporation; Starcrest Services, Inc., a Georgia Corporation; Willie E. Lennon, individually; Chantal Azanga, individually, Defendants,

Alexander S. Estfan, individually and as an officer and director of one or more of the above corporations, Defendant-Appellant.

July 9, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-CV-1307-GET), G. Ernest Tidwell, Chief Judge.

Before KRAVITCH, EDMONDSON and BARKETT, Circuit Judges.

KRAVITCH, Circuit Judge:

Alexander Estfan appeals an order by the district court issued pursuant to section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b). After finding that Estfan engaged in unfair practices in telemarketing medical alert devices, the court held that the defendants below must reimburse consumers in an amount totalling $487,500 and, to the extent repayment is not feasible, must pay the remainder to the United States Treasury. Estfan argues that the district court lacked the authority to order payment to any party other than purchasers of the medical alert devices. We affirm.

I.

Gem Merchandising Corporation was quite successful in its

business of telemarketing medical alert systems. Unfortunately, much of its success could be attributed to its illegal telemarketing methods. As found by the district court, Gem lured customers by 1) misrepresenting the value of prizes a consumer would receive if the consumer purchased certain products, 2) misrepresenting the likelihood that a consumer would receive a particular prize, 3) misrepresenting the likelihood that a consumer would *not* receive a particular prize, and 4) failing to disclose the costs a consumer would have to pay and the conditions a consumer would have to satisfy to obtain the prize of a vacation.

Alfred Estfan was the sole owner, president, and director of Gem Merchandising. The district court found that he controlled the day-to-day affairs of Gem and knew about Gem's telemarketing practices. He was aware that salespeople made material misrepresentations to consumers to induce sales, and he was in a position to control the salespeople's behavior.

The Federal Trade Commission ("FTC") brought this action against Gem Merchandising, Estfan, and four other defendants, for engaging in "unfair or deceptive acts or practices in or affecting commerce," in violation of section 5 of the FTC Act. 15 U.S.C.A. § 45(a). In its summary judgment motion, the FTC sought a permanent injunction preventing defendants from engaging in telemarketing, a judgment holding defendants jointly and severally liable for consumer redress, and an order that would enable the FTC to monitor defendants' future business activities. The court found that the defendants violated section 5 and granted plaintiff's motion for permanent injunction. It denied summary judgment on the

other two claims which were set down for a non-jury trial before the court.

At the trial, the court held that the FTC had established defendants' liability for "consumer redress" by showing that 1) defendants engaged in deceptive acts in violation of section 5, 2) the deceptive acts were widely disseminated, and 3) the consumers purchased defendants' products. The court set the amount to be paid by defendants at $487,500.[1] Further, because each defendant repeatedly participated in the wrongful acts and each defendant's acts materially contributed to the losses suffered, all defendants were held jointly and severally liable. The court ordered that the funds be distributed to consumers to the extent such distribution was feasible and that any excess be deposited in the United States Treasury.[2]

## II.

On appeal, Estfan makes three claims. First, he argues that the court's authority under section 13(b) was limited to redressing the losses of defrauded consumers and that the court lacked the power to order payment to the United States Treasury. Second, he claims that because the court ordered "consumer redress," the FTC cannot deposit funds collected pursuant to that judgment into the United States Treasury because such a payment would not constitute redress. Third, Estfan contends that his liability is limited to

---

[1] This figure is based on the court's conclusion that $100 should be paid to 5,000 consumers. The court credited defendants with $12,500, which had been paid to the State of Georgia.

[2] The court denied the FTC's request for an order allowing it to monitor defendants' future business activities.

"consumer redress," because the "penalty" of disgorgement requires proof of individual liability, not simply "corporate liability."

A.

Section 13(b) of the Federal Trade Commission Act authorizes the FTC to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission.[3]  Although section 13(b) does not expressly authorize courts to grant monetary equitable relief, the FTC argues that the unqualified grant of statutory authority to issue an injunction under section 13(b) carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits.  We agree with the FTC.

In *FTC v. Oil & Gas Corp.,* this court held that under section 13(b) a district court may exercise its inherent equitable power.

---

[3]Section 13(b) provides, in relevant part:

Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof ... would be in the interest of the public—

the Commission ... may bring suit in a district court of the United States to enjoin any such act or practice.  Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest ... a temporary restraining order or a preliminary injunction may be granted without bond: ... *Provided, further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction....

15 U.S.C. § 53(b).

*FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1433-34 (11th Cir.1984); *see also FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 571-72 (7th Cir.) (in a proceeding under section 13(b), district court has the "power to order any ancillary equitable relief necessary to effectuate" its grant of authority), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989); *FTC v. H.N. Singer, Inc.,* 668 F.2d 1107, 1112-13 (9th Cir.1982) (power to grant permanent injunctive relief carries with it authority for ancillary equitable relief); *FTC v. Southwest Sunsites, Inc.,* 665 F.2d 711, 717-19 (5th Cir.) (section 13(b) permits court to exercise full range of traditional equitable remedies), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 846 (1982). Specifically, we held that a district court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible. In reaching this conclusion, we relied on the principles of statutory construction articulated in *Porter v. Warner Holding Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).

In *Porter,* the Supreme Court upheld the district court's authority to refund illegal rent overcharges pursuant to section 205(a) of the Emergency Price Control Act of 1942, which expressly granted only the power to enjoin illegal practices. In so holding, the Court wrote that

> [u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles,* 321 U.S. [321], 329[, 64 S.Ct. 587, 591, 88 L.Ed.

754 1994]....

> Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

*Porter,* 328 U.S. at 397-98, 66 S.Ct. at 1088-89 (citations omitted).

As *Porter* makes plain, absent a clear command to the contrary, the district court's equitable powers are extensive. Among the equitable powers of a court is the power to grant restitution and disgorgement. *See, e.g., FTC v. Security Rare Coin & Bullion Corp.,* 931 F.2d 1312, 1316 (8th Cir.1991) (restitution); *Amy Travel Services,* 875 F.2d at 570 (restitution); *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978) (disgorgement).[4]

Estfan contends that the district courts may not exercise their full range of equitable powers under section 13(b). He relies almost exclusively on *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595 (9th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994), to argue that the district court lacked the authority to order payment to the U.S. Treasury.[5] In *Figgie,* pursuant to section 19 of the FTC Act, 15 U.S.C. § 57b(b), the district court had ordered the defendant to offer refunds for heat

---

[4]The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[5]In light of the many cases that address the issue of equitable remedies under section 13(b), curiously, appellant claims he was able to find only one case relevant to this issue, i.e., *FTC v. Figgie Int'l, Inc.*

detectors that had been sold through deceptive means. The court also ordered that in the event refunds did not reach a certain amount, the difference was to be given to nonprofit organizations concerned with fire safety. The circuit court held that this latter requirement was not within the district court's power under section 19.

Assuming, *arguendo,* that we agree with the Ninth Circuit's interpretation of section 19(b), that statute is distinguishable from section 13(b) because it explicitly prohibits "exemplary or punitive damages." 15 U.S.C. § 57b(b). This legislative command expressly limits a court's equitable jurisdiction. *See Porter,* 328 U.S. at 398, 66 S.Ct. at 1089. In contrast, section 13(b) has no such limitation. Thus, the Ninth Circuit was consistent when, a year after the decision in *Figgie,* it stated that in a suit under section 13(b) a court may order disgorgement of a defendant's "unjust enrichment" when it is not possible to reimburse all of the consumers who have been injured by the defendant's misrepresentations. *FTC v. Pantron I Corp.,* 33 F.3d 1088, 1103 n. 34 (1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1794, 131 L.Ed.2d 722 (1995). Thus, Estfan's reliance on *Figgie* is misplaced.

As in *Porter,* the court's authority to exercise full equitable powers is especially appropriate in a case like the one at bar. Section 13(b) plays an important role in enabling the FTC to enforce consumer protection laws. Accordingly, disgorgement, the purpose of which "is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain," is appropriate. *SEC v. Blatt,* 583 F.2d at 1335; *see, e.g., SEC v. First City Financial*

*Corp.,* 890 F.2d 1215, 1230 (D.C.Cir.1989) (permitting disgorgement and observing that "[d]isgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws"); *CFTC v. Co. Petro Marketing Group, Inc.,* 680 F.2d 573, 583-84 (9th Cir.1982) (permitting disgorgement and recognizing its deterrent effect). We conclude that section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds. To hold otherwise would permit a defendant to retain such funds simply by keeping poor records. Such a result would permit unjust enrichment and undermine the deterrence function of Section 13(b).

Further, because it is not always possible to distribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury. *See, e.g., SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985) (funds remaining after all claims have been satisfied shall revert to the U.S. Treasury).

### B.

Estfan next argues that even if the district court had the authority to order that unclaimed funds be given to the U.S. Treasury, this is not what it ordered. Estfan contends that the district court's order requiring consumer *redress* limits his liability to paying each customer $100. In its order, however, despite its use of the term "consumer redress," the district court explicitly required that all unclaimed money be paid to the U.S. Treasury. The court's order was clear.

### C.

Estfan's final argument is that disgorgement is not an

appropriate remedy in this case because he was not found individually liable. Instead, he claims, he was found liable on the basis of corporate acts with which he was involved and that under corporate liability only consumer redress would be permissible.

Estfan misunderstands the basis of his liability. He is individually liable. The fact that the actions for which he was responsible were performed by Gem Merchandising does not lessen his individual liability. Once the FTC has established corporate liability, "the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them.... The FTC must then demonstrate that the individual had some knowledge of the practices." *Amy Travel Service, Inc.,* 875 F.2d 564, 573. Having found that Estfan had direct control over the activities of Gem Merchandising, and that he was aware of the illegal practices, the court properly held Estfan individually liable.

The decision of the district court is AFFIRMED.