128 F.3d 530
 1997-2 Trade Cases P 71,950
 FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
Robert J. FEBRE, individually and as an officer of Ace
Publishing, Inc., and Ace Publishing, Inc., doing
business as Pase Corporation,
Defendants-Appellants.
 No. 97-1230.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 10, 1997.
Decided Oct. 17, 1997.
 
 Joanne L. Levine (argued), Federal Trade Commission, Washington, DC, for Plaintiff-Appellee.
 H. Kent Heller, David Stevens (argued), Heller, Holmes & Associates, Mattoon, IL, Jerome S. Lamet, Lamet & Associates, Chicago, IL, for Defendants-Appellants.
 Before BAUER, COFFEY, and EASTERBROOK, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 The Federal Trade Commission ("FTC" or "Commission") filed a complaint against Robert J. Febre ("Febre") and Ace Publishing, Inc. ("Ace") for violations of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. The district court granted summary judgment in favor of the Commission, finding that Febre and Ace had violated the FTCA by using unfair and deceptive practices in advertising, promoting, and selling work-at-home opportunities and financial services. The district court issued a permanent injunction pursuant to Section 13(b) of the FTCA, 15 U.S.C. § 53(b), preventing Febre and Ace from engaging in those types of deceptive practices. The district court also entered judgment against Febre and Ace in the amount of $16,096,345. Febre and Ace do not challenge: (1) the district court's finding that they violated Section 5 of FTCA; (2) the issuance of the permanent injunction; or (3) the district court's power to award monetary relief. However, Febre and Ace contest the actual amount of damages awarded by the district court. For the reasons set forth below, we affirm the district court's order of equitable relief in the amount of $16,096,345.
 
 Background
 
 2
 Robert J. Febre is the president, director, and sole-shareholder of Ace Publishing, Inc., doing business as Pase Corporation, which advertised and sold work-at-home opportunities and certain financial services, such as loans and grants.[1] The FTC investigated the business practices of Febre and Ace. Typically, the business opportunities advertised by Febre and Ace claimed that consumers could make large sums of money by purchasing these programs and making initial payments of between $9.95 and $89.00 in order to participate. However, after making the initial payments, the consumers received additional information that disclosed significant additional costs for continued participation in the programs. Many consumers did not invest any further time or money, but others continued to pay the money demanded, still hopeful of realizing the income the advertisements promised.
 
 
 3
 In June 1994, the Commission filed a complaint for permanent injunctive relief and monetary damages, alleging that Febre and Ace violated Section 5 of the FTCA which prohibits "unfair or deceptive acts in or affecting commerce." 15 U.S.C. § 45(a)(1). The complaint alleged that the representations made by Febre and Ace to consumers in the course of advertising, promoting, and selling the work-at-home opportunities and financial services were false and misleading and failed to disclose material information. The Commission focused on eight of Ace's programs.
 
 
 4
 Various motions and memorandums were filed in support of and in opposition to the entry of preliminary injunctions against both Febre and Ace. In July 1994, Magistrate Judge Lefkow held an evidentiary hearing with respect to the FTC's request for preliminary injunctive relief. Based upon the pleadings, the stipulations of the parties, the exhibits received into evidence, and the testimony of the witnesses, Magistrate Judge Lefkow submitted a report which included proposed findings of fact and recommended to the district court that it grant injunctive relief.
 
 
 5
 In her report, Magistrate Judge Lefkow concluded that since at least 1989, Ace has been engaged in deceptive business practices by advertising, promoting, offering for sale, selling, or inducing consumers to participate in work-at-home opportunities in which consumers would use the Ace programs to earn money. Ace sold its programs using false and misleading practices which deceived consumers, and consumers never achieved the promised earning potential. Subsequently, on July 11, 1994, Judge Marvin E. Aspen adopted her recommendations, and the district court granted FTC's motion and entered its Order for Preliminary Injunction with Asset Freeze Against Defendant Ace Publishing, Inc. Subject to Bankruptcy Court's Dominion over the Assets. Then, on July 15, 1994, the district court again granted FTC's Motion for Preliminary Injunction and entered its Order for Preliminary Injunction with Asset Freeze Against Febre.
 
 
 6
 After entry of the preliminary injunctions against both Febre and Ace, Febre filed a Motion for Partial Summary Judgment on November 25, 1994 with the Commission filing a motion in opposition on December 20, 1994. Meanwhile, the FTC filed its Motion for Summary Judgment on October 31, 1995 which included a Local Rule 12(M) statement of material facts as to which there was no genuine dispute. Febre and Ace, in their response to the Commission's Motion for Summary Judgment which was filed the same day, failed to file a statement of disputed facts as required by Local Rule 12(N) of the rules for the Northern District of Illinois.
 
 
 7
 On January 9, 1996, the district court granted FTC's Motion to Transfer its Motion for Summary Judgment to Magistrate Judge Lefkow to conduct another evidentiary hearing. Relying upon the findings of fact as reported in her July 1994 Report and Recommendation, Magistrate Judge Lefkow submitted her Report to Judge Manning on March 20, 1996, recommending denial of Febre's Motion to Lift the Preliminary Injunction. Magistrate Judge Lefkow further recommended that Febre's Motion for Partial Summary Judgment also be denied. The district court accepted these recommendations on April 23, 1996.
 
 
 8
 On July 2, 1996, Magistrate Judge Lefkow filed another Report and Recommendation, recommending that the district court grant FTC's Motion for Summary Judgment. Febre and Ace filed objections to the magistrate judge's report on July 12, 1996,[2] and the FTC responded to their objections on July 22, 1996. The FTC also filed its Proposed Order for Permanent Injunction and Final Judgment Against Febre and Ace on the same day.
 
 
 9
 The district court entered its Memorandum and Order on September 25, 1996, fully adopting the magistrate judge's Report and Recommendation granting the permanent injunction and ordering Febre and Ace to pay $16,096,345 as equitable restitution to compensate the consumers. The FTC filed a new proposed order on October 8, 1996. However, more than three months later, a final written order still had not been entered, and Febre and Ace filed their notice of appeal on January 21, 1997. The FTC immediately filed its Motion for Entry of Final Judgment on January 30, 1997.
 
 
 10
 The district court granted the FTC's motion and entered its Order for Permanent Injunction and Final Judgment against Febre and Ace Publishing, Inc. on February 6, 1997. The final judgment granted the permanent injunction, ordered Febre and Ace to pay more than $16,000,000 in damages, and specified that if any money could not be distributed to the victims, then the excess should be paid to the United States Treasury as disgorgement of defendants' unjust enrichment.
 
 
 11
 Febre and Ace now appeal this award of equitable monetary relief. They argue that the district court abused its discretion by: (1) awarding damages at summary judgment without a hearing; (2) using the figures generated from the Pase Consumer database and the figures asserted by Pase employees to calculate damages; (3) calculating damages by consumers' losses rather than defendants' profits; and (4) ordering equitable disgorgement of damages to the United States Treasury.
 
 Analysis
 A. Jurisdictional Statement
 
 12
 As a threshold matter, an initial question arose as to whether we have jurisdiction to hear this appeal. Pursuant to the Federal Rules of Appellate Procedure, "a notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." Fed. R.App. Pro. 4(a)(2). In FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., the appellant filed a notice of appeal after the district court had granted summary judgment and requested the parties to submit a final order, but before the court had entered final judgment. FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991). The United States Supreme Court held that the subsequent entry of a final judgment validated the appeal under Federal Rule of Appellate Procedure 4(a)(2). Id. at 277, 111 S.Ct. at 653. Thus, the notice of appeal filed by Febre and Ace on January 21, 1997 was properly validated on February 6, 1997 when the district court entered its order and final judgment. Accordingly, we have jurisdiction to hear this appeal.
 
 B. Standard of Review
 
 13
 We also should clarify that this appeal involves only a question regarding the actual amount of damages awarded by the district court. We do not review the district court's grant of summary judgment, nor do we examine the power of the court to grant relief in this case.[3] We review only the narrow issue of whether the actual amount of damages awarded by the district court, $16,096,345, was calculated properly. We review a district court's grant of equitable relief for abuse of discretion. Weinberger v. Romero-Barcelo, 456 U.S. 305, 320, 102 S.Ct. 1798, 1807, 72 L.Ed.2d 91 (1982) (the proper standard for appellate review is whether the district court abused its discretion in denying equitable relief); SEC v. Advance Growth Capital Corp., 470 F.2d 40, 53 (7th Cir.1972) (trial court's decision whether to grant injunctive relief reviewed for abuse of discretion).
 
 
 14
 C. Power of the Court to Award Monetary Relief at Summary Judgment
 
 
 15
 First, Febre and Ace argue that the actual amount of consumer redress as calculated by consumer losses is in dispute and not ripe for decision at the summary judgment stage of the proceedings. Section 13(b) of the Federal Trade Commission Act plays an important role in enabling the FTC to enforce consumer protection laws and often is used by the FTC to pursue violations of Section 5 of the FTCA. Section 13(b) provides "[t]hat in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b).
 
 
 16
 The district court's authority to grant a permanent injunction also includes the power to grant other ancillary relief sought by the Commission. FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1026 (7th Cir.1988). A district court has authority to "order any ancillary equitable relief necessary to effectuate the exercise of the granted powers." FTC v. Amy Travel Service, Inc., 875 F.2d 564, 572 (7th Cir.1989). The power to grant ancillary relief includes the power to order repayment of money for consumer redress as restitution or recession. Id. at 571. The district court found that Febre and Ace violated Section 5 of the FTCA and permanently enjoined them from engaging in deceptive business practices. Accordingly, the district court has the authority to grant equitable ancillary relief at summary judgment to effectuate the permanent injunction.
 
 
 17
 D. Factual Disputes that Should Be Resolved Before Damages Are Calculated
 
 
 18
 Next, Febre and Ace assert that there are genuine issues of material fact regarding: (1) the numbers used in the calculations; (2) the appropriate formula for calculation of the damages; and (3) the actual amount of restitution awarded.
 
 
 19
 1. The Figures Used to Calculate the Damages
 
 
 20
 Febre and Ace argue that the data from the Pase Consumer Database cannot be used because the information contained in the database is not complete.[4] They suggest that other departments at Pase retained archived data and that some relevant consumer records had been erased from the computer records. This argument does not help appellants whatsoever. In fact, it illustrates that there may be even more customers to whom defendants owe restitution. If any records were erased, defendants claim that customer refunds were not properly calculated, and thus the calculation of damages is too high. This argument also has no merit. Febre and Ace seem to miss the point that if customers have been erased from the database, then the initial money they paid for the programs would not be included in the calculation of the damages. Therefore, the fact that a refund may not have been deducted is of no consequence because the initial payment by the consumer was not included in the calculations.
 
 
 21
 As we stated earlier, the FTC sought summary judgment and requested entry of a permanent injunction and an award of more than $16,000,000 in equitable relief. The court granted summary judgment, ordered the permanent injunction, and awarded damages in the amount requested, based upon the FTC's assertions that $16,096,345 was the total amount of consumer losses. The Commission must show that its calculations reasonably approximated the amount of customers' net losses, and then the burden shifts to the defendants to show that those figures were inaccurate. See, e.g., SEC v. Lorin, 76 F.3d 458, 462 (2d Cir.1996); United States Department of Housing & Urban Development v. Cost Control Marketing & Sales Mgmt. of Virginia, Inc., 64 F.3d 920, 927 (4th Cir.1995).
 
 
 22
 Febre and Ace do not offer any evidence as to why or how the Commission's calculations are not appropriate nor do they challenge the accuracy of the higher number.[5] Febre and Ace's contention that the computer database lacked necessary information does not automatically mean that the Commission's calculations are not reliable. "[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." SEC v. First City Financial Corp., Ltd., 890 F.2d 1215, 1232 (D.C.Cir.1989). As the Third Circuit has said:
 
 
 23
 [W]here defendants' record keeping has "so obscured matters that lawful gains cannot be distinguished from the unlawful without incurring inordinate expense, it is well within the district court's power to rule that the measurement of disgorgement will be the more readily measurable amount of losses incurred by the defendants' customers in the unlawful transactions." CFTC v. American Metals Exchange Corp., 991 F.2d 71, 77 (3rd Cir.1993) (quoting CFTC v. American Bd. of Trade, Inc., 803 F.2d 1242, 1252 (2d Cir.1986)).
 
 
 24
 The FTC detailed the consumer sales of the eight programs as maintained by Ace in Pase Corporation's records in its statement of uncontested facts. It substantiated these numbers with statements from Pase employees Denise Brown, Deborah M. Richardson, and Efraim Arenas; FTC computer specialist Francis M. Curtin; and certified public accountant William H. Thullen. See Exhibits in Support of Plaintiff's Motion for Summary Judgment. As provided in FTC's statement of uncontested facts, it is clear how the Commission arrived at a total consumer loss of $16,096,345.[6]
 
 
 25
 In support of its summary judgment motion, the FTC filed a Rule 12(M) statement of undisputed facts based upon the findings of fact contained in Magistrate Judge Lefkow's July 1994 Report. Febre and Ace failed to respond with a Rule 12(N) statement. Local Rule 12(M) of the General Rules of the United States District Court for the Northern District of Illinois requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." Local Rule 12(M). Each statement is to be supported by references to affidavits, parts of the record, or other supporting materials. Id. Local Rule 12(N) provides a corresponding requirement for the nonmoving party to respond to each statement made by the moving party, noting any disagreement and referring to the record in support of any disagreement. Local Rule 12(N). Material facts set out by the moving party "will be deemed to be admitted unless controverted by the statement of the opposing party." Id. The non-moving party is also to supply a statement of any additional facts that require denial of summary judgment, and correspondingly, any material facts set forth by the nonmoving party will be deemed admitted unless controverted by the statement of the moving party. Id.
 
 
 26
 We have upheld strict compliance with Local Rule 12 on numerous occasions. See, e.g., Bourne Co. v. Hunter Country Club, Inc., 990 F.2d 934 (7th Cir.1993) (where defendant denied the materiality of plaintiff's statement of facts, defendant failed to deny material facts, and they were properly deemed admitted); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992) (upholding district court's decision to deem admitted defendant's Rule 12 facts to which plaintiff failed to specifically respond, even where plaintiff generally disputed those facts throughout its briefs); Maksym v. Loesch, 937 F.2d 1237, 1240-41 (7th Cir.1991) (approving strict enforcement of Rule 12). The magistrate judge properly accepted the calculations as set forth in FTC's statement of facts which were supported by the record, and the district court adopted those recommendations. Accordingly, there was no abuse of discretion in awarding $16,096,345 in damages where the amount was properly supported in the record and defendants failed to dispute the facts in a timely and appropriate manner.
 
 2. The Formula for Calculation of Damages
 
 27
 Next, Febre and Ace argue that the proper formula to calculate damages is defendants' profits and not consumers' losses. They suggest that "the usual measure" of disgorgement is the amount of profits. Yet, they do not provide an explanation or any support for their suggestion that net profits are the usual measure of damages. See Magistrate Judge Lefkow Report and Recommendation of July 3, 1996, FTC v. Febre, 1996 WL 396117 at * 7 (N.D.Ill.1996). Febre and Ace suggest that a court may award consumer redress in the amount of consumer losses only if the amount of defendants' profits are not readily calculable. Febre and Ace argue that calculating damages is impossible at this stage because there is conflicting testimony whether documents existed which would allow the calculation of profits. Another useless argument. The existence of these records is immaterial; these documents would have no impact upon the calculation of damages.
 
 
 28
 A major purpose of the Federal Trade Commission Act is to protect consumers from economic injuries. Courts have regularly awarded, as equitable ancillary relief, the full amount lost by consumers. See, e.g., FTC v. Gem Merchandising Corp., 87 F.3d 466 (11th Cir.1996) (affirming an award of damages as calculated by consumers' losses and an order of disgorgement to the Treasury); FTC v. Amy Travel Service, Inc., 875 F.2d at 570 (affirming restitution award of $6,629,100, the amount consumers paid for travel certificates). The district court accepted the magistrate judge's determination that consumers' net payments to defendants provided the appropriate measure of restitution, without any consideration of defendants' profits, and similarly concluded that "consumer redress in the amount of purchase price of the relevant product or business [is] appropriate monetary relief." FTC v. Febre, 1996 WL 556957 at * 3 (N.D.Ill.1996); July 1996 Report and Recommendation, FTC v. Febre, 1996 WL 396117 at * 7 (N.D.Ill.1996). See also FTC v. US Sales Corp., 785 F.Supp. 737, 753 (N.D.Ill.1992). Thus, the defendants' profits were not taken into consideration, and Febre and Ace's argument challenging the calculation formula fails.
 
 E. The Nature of the Damages
 
 29
 Finally, Febre and Ace argue that an award of more than $16,000,000 without the benefit of a hearing is punitive in nature. They argue that because Section 13(b) of the FTCA does not provide for an award of punitive damages, the district court decision should be reversed. Punitive damages are damages awarded above and beyond what will compensate the victim for his losses. The damages awarded by the district court were calculated directly from defendants' records and statements given by Pase employees. The FTC calculated damages based upon what consumers lost. Here, the consumer will not receive anything greater than what was originally paid for the programs.
 
 
 30
 Additionally, Febre and Ace argue that such disgorgement amounts to a penalty that exceeds the authority of the court as provided by Section 13(b) of the FTCA. They cite the Ninth Circuit's opinion in FTC v. Figgie Intern., Inc., 994 F.2d 595, 607-08 (9th Cir.1993), cert. denied, 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994), in support of this assertion. Figgie involved a different statutory provision, Section 19(b) of the FTCA, which expressly precluded an award of exemplary or punitive damages. 15 U.S.C. § 57b(b). In contrast, Section 13(b) has no such limitation. See 15 U.S.C. § 45. Febre and Ace's reliance on Figgie is misplaced.
 
 
 31
 Disgorgement to the United States Treasury does not transform compensatory damages into punitive damages. To ensure that defendants are not unjustly enriched by retaining some of their unlawful proceeds by virtue of the fact that they cannot identify all the consumers entitled to restitution and cannot distribute all the equitable relief ordered to be paid, the FTC often requests orders directing equitable disgorgement of the excess money to the United States Treasury. See, e.g., SEC v. Blavin, 760 F.2d 706, 713 (6th Cir.1985) (funds remaining after all claims have been satisfied shall revert to the U.S. Treasury).
 
 
 32
 This court has held that disgorgement is designed to be remedial and not punitive. Rowe v. Maremont Corp., 850 F.2d 1226, 1241 (7th Cir.1988). "[D]isgorgement does not penalize, but merely deprives wrongdoers of ill-gotten gains." CFTC v. Hunt, 591 F.2d 1211, 1222 (7th Cir.1979). As an equitable remedy, disgorgement is meant to place the deceived consumer in the same position he would have occupied had the seller not induced him to enter into the transaction. Disgorgement also prevents the defendant from being unjustly enriched by his fraud. Randall v. Loftsgaarden, 478 U.S. 647, 671-72, 106 S.Ct. 3143, 3157-58, 92 L.Ed.2d 525 (1986).
 
 
 33
 The Eleventh Circuit specifically addressed this issue of disgorgement in FTC v. Gem Merchandising Corp., 87 F.3d 466 (11th Cir.1996). The FTC filed suit against Gem Merchandising Corporation for violations of Section 5 of the FTCA for engaging in illegal telemarketing practices. Id. at 467. Upon finding that Gem Merchandising engaged in unfair and deceptive practices, the district court held that the defendants must reimburse the consumers for their losses and to the extent that repayment was not feasible, the remainder to be paid to the United States Treasury. Id. The Eleventh Circuit affirmed the district court decision and concluded that "because it is not always possible to distribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury." Id. at 469-70.
 
 
 34
 We agree with the Eleventh Circuit and find its conclusion consistent with the general purpose of the FTCA, which enables the FTC to enforce consumer protection laws, and the specific provisions of Section 13(b), which authorizes the court to provide equitable relief. We conclude that Section 13(b) permits a district court to order a defendant to disgorge illegally obtained funds. Accordingly, the district court did not abuse its discretion by ordering disgorgement of the damages.
 
 Conclusion
 
 35
 For the foregoing reasons, the district court did not abuse its discretion by awarding monetary equitable relief and ordering disgorgement to the United States Treasury. Accordingly, we A FFIRM the district court's award of damages in the amount of $16,096,345.
 
 
 
 [1]
 Ace provided four work-at-home opportunities: (1) the "Home Inquiry Tabulator" program which asserted that consumers could earn $764 in a few hours for a minimal amount of work; (2) the "Amazing Pase Photo System" program which claimed that consumers could earn up to $1800 in one day; (3) the "High-Tech 900" program which claimed that a consumer could earn over $250,000 per year in proven income; and (4) the "Mailing Postcards" program which stated that a consumer could earn up to $15,000 per day just by mailing postcards. Ace also promoted the "Mailing List Compiler" program which presumably allowed consumers to compile names and addresses from readily available sources. Ace also provided three financial services programs: (1) the Grant program; (2) the Self-Liquidating Loan program; and (3) the Fortunecard program
 
 
 [2]
 We would like to note, as Judge Manning did in her Memorandum and Order, that the defendants did not object to the magistrate judge's findings regarding liability and directed the court's attention to the matter of damages
 
 
 [3]
 The appellants do not appeal the finding of liability nor do they challenge the entry of the permanent injunction. Febre and Ace recognize that entry of the permanent injunction was proper. Furthermore, they recognize that the district court has the authority to act as it did and to grant monetary equitable relief necessary to effectuate the permanent injunction
 
 
 [4]
 Using the information stored in the database, Francis M. Curtin, a computer specialist employed by the FTC, submitted a summary report based upon the Pase Consumer Records computer database which contained information on customer payments, commissions, and refund payments regarding the eight programs at issue. His report concluded that there were 195,499 customers who had paid $13,116,021 with refunds and commissions reducing the net amount received to $13,077,655
 
 
 [5]
 In oral arguments, appellants did not contest the calculations as generated from the Pase consumer database which resulted in damages in the amount of $13,077,655. Appellants' counsel only contested the award of an additional $3,019,310 in damages
 
 
 [6]
 FTC's Rule 12(M) Statement provides that between January 1, 1989 and December 31, 1993, consumers paid defendants a total of $16,615,424 for the eight programs at issue. FTC's 12(M) Statement at p 136, pp 130-135. Additionally, consumers received $498,409 in refunds. Id. at p 141. Thus, in subtracting the amount of refunds from the total consumer sales, the remainder is $16,096,345, which is the amount of damages requested by the Commission