**FEDERAL TRADE COMMISSION**

v.

MAGAZINE SOLUTIONS, LLC, a Pennsylvania limited liability company, doing business as MagazineSolutions, doing business as United Publishers' Service, doing business as Read–N–Save America; United Publishers' Service, a Pennsylvania corporation, also doing business as Magazine Solutions, doing business as MagazineSolutions, doing business as Read–N–Save America; Joseph Martinelli, individually and as an officer of Magazine Solutions, LLC, United Publishers' Service, Inc.; Barbara Deriggi, individually and a manager of Magazine Solutions, LLC, United Publishers' Service, Inc., also known as Barbara Nicely; James Rushnock, individually and as a manager of Magazine Solutions, LLC, United Publishers' Service, Inc., also known as Jay Gilbert

Magazine Solutions, LLC, United Publishers' Service, Inc. Joseph Martinelli, Appellants.

No. 10–2402.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 23, 2011.

Opinion filed: June 23, 2011.

John F. Daly, Esq., Ruthanne M. Deutsch, Esq., Federal Trade Commission, Washington, DC, Laura S. Irwin, Esq., Office of the United States Attorney, Pittsburgh, PA, for Federal Trade Commission.

Martin A. Dietz, Esq., Pittsburgh, PA, for Appellants.

Anthony E. Patterson, Esq., Anthony E. Patterson & Associates, Pittsburgh, PA, for Defendants.

Before: BARRY, AMBRO, and VAN ANTWERPEN, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

This is a deceptive marketing case in which the Federal Trade Commission ("FTC") filed a complaint against Joseph Martinelli and his companies for telemarketing a misleading coupon savings program. Following a bench trial, the District Court found Martinelli and his companies liable for multiple counts, permanently enjoined them from engaging in similar marketing schemes, and awarded restitution to their customers. Martinelli and his companies appeal. We affirm.

### I.

Because we write solely for the parties, who are familiar with the facts of the case, we recite only those that are necessary to our decision. Between 2002 and 2007, Martinelli and his companies—Magazine Solutions, LLC and United Publishers' Services, Inc. (together "Martinelli")—telemarketed a package of five magazine subscriptions and a coupon certificate booklet entitled the "Read–N–Save program." The package was sold through a series of unsolicited phone calls targeted at new mothers and families with young children. During the calls, Martinelli's telemarketers promised that program subscribers would receive coupons worth at least $1,000 (for groceries and other household items) along with their magazine subscriptions.

The Read–N–Save program was not all it was advertised to be. Specifically, redeeming the coupons proved difficult, if not impossible. Customers didn't receive the promised coupons, had difficulty redeeming them, or couldn't redeem them for their full value. After experiencing these problems, many customers tried to cancel their subscriptions. In response, Martinelli's telemarketers falsely told customers that they were legally obligated to continue payment and that Martinelli would bring legal action if they tried to cancel. Martinelli received about $5,500,000 from customers enrolled in this program, but spent only $760,000 on providing them with magazines during the same time.

In May 2007, the FTC filed a seven-count complaint against Martinelli, alleging violations of section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a) (prohibiting unfair or deceptive practices in or affecting commerce), and related provisions of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4 (prohibiting deceptive or abusive telemarketing acts or practices). In December 2008, the District Court granted partial summary judgment in favor of the FTC. It also determined that Martinelli should be held personally liable for all actions of his companies because he was the owner and sole officer of United Publisher, the only member of Magazine Solutions, and had sole power to direct and control their operations. Martinelli did not dispute this. After a three-day bench trial on the remaining liability issues and on the remedy if there were liability, the Court permanently enjoined Martinelli from engaging in telemarketing of pro-

grams involving the sale of magazines or marketing of coupons. The Court also awarded restitution in the amount of $4,782,011, representing the net revenue received by Martinelli after subtracting the wholesale cost of the magazines he provided to subscribers. Finally, the Court rejected Martinelli's post-judgment plea to limit the amount of restitution for which he would be personally liable.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's factual findings from a non-jury trial under a clearly erroneous standard, but review questions of law *de novo. Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). We review a district court's choice of the amount of equitable monetary relief for an abuse of discretion. *See United States v. Lane Labs–USA Inc.*, 427 F.3d 219, 229–30 (3d Cir.2005).

■ On appeal, Martinelli makes three arguments. First, he argues that the record contained insufficient evidence to support the District Court's finding that he materially misrepresented the terms of the coupon redemption. We disagree. There is overwhelming record evidence that Martinelli represented to consumers that participation in the program would entitle them to more than $1,000 in coupons, this representation was likely to mislead because the coupons were unobtainable or difficult to redeem, and the misrepresentation was material because consumers signed up for the program in order to receive the promised coupons (not to obtain magazine subscriptions).[1] Thus, the

---

1. The evidence includes the testimony of program subscribers, who testified about their personal experiences, and representatives of the Better Business Bureau and the Pennsylvania Attorney General's Office, who testified

about consumer complaints. The record also includes hundreds of complaints from consumers who did not testify. As the District Court concluded, "[t]he clear evidence of record indicates that customers did have valid

Court did not clearly err in holding Martinelli liable under section 5 of the FTCA.

■ Second, Martinelli contends that the Court erred in calculating restitution as total net revenue, rather than net profits. We are not persuaded. We have previously upheld an award of gross revenues in a similar context. *Lane Labs*, 427 F.3d at 231, 236. In addition, our sister Courts of Appeals that have considered the question have held that a district court may grant anything up to gross revenues as restitution under the FTCA. *See, e.g., FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir.1996) (affirming a damage award of the total cost to consumers); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571–72 (7th Cir.1989) (affirming restitution in the amount of gross revenues— the total amount paid by consumers for travel certificates). Here, the Court awarded restitution that was less than gross revenues, as it subtracted the wholesale cost of the magazines Martinelli provided to consumers from his total revenue. This was well within its discretion.

■ Finally, Martinelli challenges as inequitable the Court's imposition of personal liability for restitution for revenue received by his companies.[2] Again, we disagree. As the Court found, "Martinelli's W–2's did not necessarily reflect the money he derived from [ his companies].... Indeed, he used the corporate ledgers as his own personal bank accounts, using corporate funds to satisfy personal obligations." App. 39. In this context, we are similarly "unconvinced by Martinelli's pleas for mercy." *Id.*

\*　\*　\*　\*　\*　\*

For these reasons, we affirm.

---

complaints about not receiving coupons, about misrepresentations regarding the types of coupons actually available, and about even the availability of coupons." App. 14. It found Martinelli's "handling of the coupon provider portion of [his] program to be particularly egregious." *Id.*

2. Martinelli also argues that the Court lacked authority to order restitution as ancillary equitable relief under § 13(b) of the FTCA. As he failed to raise this argument before the Court, it is waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir.1991). He is also incorrect. Our sister Courts of Appeals recognize that district courts have discretion to grant monetary equitable relief under section 13(b). *See, e.g., FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n. 6 (10th Cir.2005) ("Although § 13(b) does not expressly authorize a court to grant consumer redress (*i.e.*, refund, restitution, rescission, or other equitable monetary relief), § 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies, including the power to grant consumer redress. In cases where the FTC seeks injunctive relief, courts deem any monetary relief sought as incidental to injunctive relief.").