Paul A. Magnuson, United States District Court Judge
This matter was tried to the Court from March 5 through 8, 2019. At issue was *1138 whether Plaintiffs have demonstrated that their disgorgement figure reasonably approximates the amount of Defendants' unjust gains. For the following reasons, the Court finds that Plaintiffs have not met their burden.
BACKGROUND
Defendants Vylah Tech, Express Tech, and Tech Crew (together, "Vtec") advertised, distributed, and sold computer technical support services and security software. Vtec operated as a common enterprise, sharing the same address, owners, and business model. Defendant Angelo Cupo is an owner and CEO of Vylah Tech and a manager of Tech Crew. Defendant Robert Cupo is a manager of Vylah Tech, an owner and director of Tech Crew, and a member of Express Tech.
The Federal Trade Commission ("FTC") brought this action in May 2017, claiming that Defendants violated 15 U.S.C. § 45(a) by engaging in "unfair or deceptive acts or practices in or affecting commerce." The State of Florida joined in the Complaint, alleging that Defendants also violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). See Fla. Stat. § 501.204. The factual background regarding Defendants' deceptive practices is more fully set forth in the Court's Order on summary judgment. (Docket No. 330.)
The FTC seeks $ 3,400,000 in disgorgement of unjust gains from Defendants under 15 U.S.C. § 53(b). It also requests various other forms of injunctive and ancillary relief that were not argued at trial. (See Docket No. 398-1.) The grant of statutory authority to issue an injunction under § 53(b) "carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits." FTC v. Gem Merch. Corp., 87 F.3d 466, 468 (11th Cir. 1996). The State seeks the same injunctive relief and to share jointly in the monetary relief the FTC requests, as the two statutes mirror one another. "The FDUTPA makes clear that conduct which constitutes a 'deceptive act or practice,' 'an unfair act or practice,' or 'false advertising' under the FTC Act is a violation of the FDUTPA." FTC v. Alcoholism Cure Corp., No. 3:10cv266, 2011 WL 8190540, at *6 (M.D. Fla. Dec. 5, 2011).
On January 9, 2019, this Court granted in part and denied in part Plaintiffs' motions for summary judgment. (Docket No. 330.) The Court granted summary judgment on the issue of liability under 15 U.S.C. § 45(a) and FDUTPA. The Court found that there was no genuine issue of material fact as to liability based on the numerous call transcripts, sales scripts, website screenshots, expert declarations, and other documents in the record which evidenced Defendants' widespread practice of disseminating false or misleading information about computers and computer security to induce customers to buy Defendants' software.
However, the Court denied summary judgment on the issue of monetary relief because there were genuine issues of material fact regarding Plaintiffs' calculation of unjust enrichment. Specifically, questions lingered regarding the accuracy of Defendants' records, whether Plaintiffs had adequately tied their disgorgement figure to the amount of Defendants' unjust gains, and what other forms of injunctive relief may be appropriate.
DISCUSSION
A. Reasonable Approximation of Unjust Enrichment
In an FTC equitable-enforcement action, defendants are liable to the extent of their ill-gotten gains. FTC v. IAB Mktg. Assoc., LP, 972 F. Supp. 2d 1307, 1312 (S.D. Fla. 2013). Plaintiffs bear the "burden of proving the disgorgement figure *1139 reasonably approximates the amount of unjust enrichment." CFTC v. Sidoti, 178 F.3d 1132, 1138 (11th Cir. 1999). The "burden for showing the amount of assets subject to disgorgement ... is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required] ... Exactitude is not a requirement.' " SEC v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (quoting SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) ). This calculation "may be properly based on estimates" when evidence is lacking. FTC v. Life Mgmt. Servs., 350 F. Supp. 3d 1246, 1274 (M.D. Fla. 2018). "[T]he 'power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment.' " ETS Payphones, 408 F.3d at 735 (quoting SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir.1978) ).
The correct measure of unjust gains is the amount of net revenue, or gross receipts minus refunds. Courts must assess the reasonableness of the FTC's approximation. FTC v. Wash. Data Res., 856 F. Supp. 2d 1247, 1280 (M.D. Fla. 2012). Once Plaintiffs establish a reasonable approximation of unjust enrichment, the burden of proof shifts to Defendants to rebut Plaintiffs' calculations. SEC v. First City Fin. Corp., 890 F.2d 1215, 1232 (D.C. Cir. 1989).
1. Records Used to Calculate Approximation
Plaintiffs relied solely on an FTC employee and forensic accountant, Emil George, to calculate a reasonable approximation of unjust enrichment based on Defendants' bank records. Plaintiffs argue that net revenue from Defendants' bank records is a reasonable approximation of unjust enrichment because every sale Defendants made was tainted by their deceptive sales tactics. However, Plaintiffs' reliance on bank records alone is insufficient to establish that Plaintiffs' disgorgement total reasonably approximates Defendants' unjust gains. The bank records admitted into evidence do not include enough specificity to allow Plaintiffs to identify with any precision which transactions originated from consumer sales, the number of transactions included in each deposit, or the purpose of each purchase. The Receiver in this matter, Barry Mukamal, testified that "once cash goes into a bank, it's commingled, and there is no separate identification of source and use of funds by product line." (Tr. 109.) Therefore, Mr. George was forced to make assumptions about the nature of certain transactions. (Tr. 178 ("Q: So how would you know that merchant processing deposits are consumer receipts? A: It's an assumption I would make.").) While Plaintiffs argue that Mr. George's methodology gives an approximate amount of net revenue based on consumer purchases, Mr. George testified that he could not differentiate between consumer receipts and business-to-business transactions in bank records. (Tr. 394 ("Q: Based on the bank statements, how can you tell whether a transaction, an incoming merchant transaction, includes only consumer sales or also includes business to business credit card sales? A: You couldn't.").)
The parties agree that payments from a third party, Avanquest, were legitimate and not to be included in any disgorgement figure. (George Decl. (Docket No. 302) Ex. 1 at ¶ 7.) Mr. George testified that he excluded those payments. (Tr. 169.) However, the remainder of Mr. George's calculation required guesswork and speculation. Numerous inconsistencies and contradictions in Plaintiffs' methodology were exposed during cross-examination; Mr. George was unable to explain why a multitude *1140 of figures were either included or excluded from his final calculation. (See Tr. 295-377.) By choosing to rely only on Defendants' bank records when calculating the disgorgement figure, Plaintiffs undermined the reasonableness of their approximation.
Plaintiffs claim that these shortcomings are due to Defendants' poor recordkeeping, invoking the theory that "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." FTC v. Verity Int'l, Ltd., 443 F.3d 48, 69 (2nd Cir. 2006) (quotations omitted). However, "[t]his presumption against the wrongdoer should not [be] invoked without first establishing a reasonable approximation of unjust gain." Id.
Additionally, Plaintiffs did not establish that Defendants' "illegal activity" created the uncertainty in Plaintiffs' calculation. Rather, the evidence presented at trial establishes that much more detailed information was available to aid in Plaintiffs' calculation, and they chose not to use it. For example, data from Authorize.net was available to Plaintiffs for the relevant period. Authorize.net is a merchant gateway that allows merchants to accept credit card payments. (Tr. 64-65.) Critically, the information stored in Authorize.net included customer's names, credit card information, the product that was sold, the price charged, and whether the transaction settled. (Tr. 65.) Although Plaintiffs argue that no Authorize.net data existed before July 2015, the Receiver testified that such data did in fact exist but was archived. (Tr. 96.) It seems that Plaintiffs did not make any serious effort to retrieve the archived data to assist in calculating the disgorgement total. In fact, Mr. George testified that he was unaware of Authorize.net until trial. (Tr. 235-37.) Defendants also maintained spreadsheets and daily updates that tracked consumer sales with higher specificity than aggregate bank records. Plaintiffs disputed the accuracy and thoroughness of these sources but presented no evidence showing that the Authorize.net data or Defendants' internal records had been modified or compromised in any way.
Furthermore, Plaintiffs relied on data from Authorize.net to bolster the credibility of their disgorgement total at trial through the testimony of their investigator, Rebecca Maturo. Ms. Maturo testified that she used Authorize.net data to ensure that certain "legitimate" purchases from January 2016 to May 2017 were excluded from Mr. George's calculation. (Tr. 508-14.) Ms. Maturo testified that the Authorize.net data allowed her to see consumer purchases with transaction-level detail, which allowed her to analyze the type of purchases that should be excluded from the government's disgorgement total. (Tr. 508-09.) Plaintiffs gave Ms. Maturo's new calculation to Defendants the morning before her testimony. (Tr. 515-16.) Plaintiffs cannot claim that using Authorize.net to calculate their disgorgement total was unnecessary while relying on it to demonstrate the precision of a portion of their calculation. It stands to reason that if the Authorize.net data provided an accurate snapshot of which purchases were properly excluded from Plaintiffs' total, as Ms. Maturo suggested, such data should have played a role in Mr. George's gross receipts calculation. At the very least, the merchant data from Authorize.net could have helped to reduce the number of "assumptions" Mr. George made regarding whether a bank record qualified as a consumer receipt.
Mr. George has used internal documents to calculate unjust gains in the past,[1] and it is unclear why he performed a *1141 similar calculation in this matter without examining Defendants' updates and spreadsheets. Doing so would have provided greater detail and created a stronger connection between Defendants' revenues and the amount of unjust enrichment. Although exactitude is not required, Plaintiffs cannot merely turn a blind eye to data that would have allowed them to more precisely determine which transactions were consumer transactions and which were not. See Verity, 443 F.3d at 69-70 ("[T]he reasonableness of an approximation varies with the degree of precision possible. But here, the district court required no precision in the FTC's approximation even though precision could be had. The FTC's investigatory power gives it the capacity to estimate with some degree of precision how many [consumers were exposed to deception]."). The FTC had investigatory powers, access to Defendants' records, and the unfettered ability to provide Mr. George, its own employee, with any information and documentation it desired in order to calculate unjust enrichment as it saw fit. The FTC decided to only provide Mr. George with bank records, thereby unnecessarily limiting the precision of his calculation even though further precision was possible.
Other district courts have cast doubt on similar calculations based on bank records alone. E.g., FTC v. A to Z Mktg., No. 13cv919, 2014 WL 12479617, at *9 (C.D. Cal. Sep. 17, 2014) ("The FTC submits a declaration of a forensic accountant, Emil George, who states that the bank accounts of the [Defendants] show a net amount of $ 38.3 million received from consumers. The Court is not satisfied that the George declaration indisputably establishes the appropriate amount for a disgorgement order against the ... Defendants.") Plaintiffs did not properly use all sources of data at their disposal to ensure that the amount requested reasonably approximates unjust gains.
2. Frequent Changes in Approximation
Plaintiffs' disgorgement total has changed frequently throughout this litigation and even changed during trial, evidencing their own confusion as to the proper amount of unjust enrichment. Mr. George presented three different declarations in this matter, all of which altered Plaintiffs' calculated total of unjust enrichment. (See GX-15, GX-16, Docket No. 302-1.) Just before trial, Plaintiffs reverted to the total Mr. George calculated in his second declaration, $ 3,424,264.75. (Docket No. 360 at 3.) However, at trial, Plaintiffs again attempted to rely on Mr. George's third declaration as evidence of their requested disgorgement total. (Tr. 183-85.) Ms. Maturo did not start work on her new calculations based on Authorize.net data until a "couple of weeks" before trial and did not provide her calculation to Defendants until the morning of her testimony. (Tr. 515.)
Plaintiffs attempt to frame their approximation as reasonable by pointing out that Defendants' tax-return revenues exceed Plaintiffs' approximation by approximately $ 1 million. (Docket No. 403-1 at 14, 30.) However, this fact only provides further evidence that Plaintiffs have failed to accurately calculate the amount of Defendants' net revenue, and therefore unjust gains. As this Court stated at trial, it is obvious that the disgorgement total is a moving target. (Tr. 186.)
3. Non-party Funds Included in Approximation
Plaintiffs' total includes funds from Tech Logic Support's bank records.
*1142 Tech Logic Support is a non-party and was not named in the Complaint. At trial, this Court raised concerns over the jurisdictional consequences of Plaintiffs' inclusion of these funds. (Tr. 159-64.) "Courts of equity have long observed the general rule that a court may not enter an injunction against a person who has not been made a party to the case before it." E.A. Renfroe & Co. v. Moran, 338 Fed. Appx. 836, 838-39 (11th Cir. 2009) (quoting Additive Controls & Measurement Sys. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed. Cir. 1996) ). "[T]he Court lacks the authority to bind a non-party, or to impose injunctive relief on a non-party." Sewell v. D'Alessandro & Woodyard, Inc., No. 2:07cv343, 2008 WL 2445765, at *12 (M.D. Fla. June 16, 2008) (citation omitted). Plaintiffs allege that Tech Logic Support's funds should be properly included in the disgorgement total because it is part of a common enterprise with the named Defendants. (Tr. 161-163.) While that may be true, Plaintiffs did not name Tech Logic Support in their Complaint when they asserted a theory of common enterprise. (See Docket No. 2 at ¶ 15.) Therefore, the Court lacks jurisdiction to impose injunctive relief on Tech Logic Support, and its funds should not have been included in a disgorgement total.
Plaintiffs cite to FTC v. Health Formulas, LLC, No. 2:14cv1649, 2015 WL 2130504 (D. Nev. May 6, 2105) to support the contention that a district court may enter injunctive relief against non-parties in FTC actions. However, the court in Health Formulas specifically declined to enjoin the relevant non-parties because they were not named in the complaint, the FTC had not made any request to add them to the case, and they did not have an opportunity to present evidence and argument on their behalf. Id. at 24-25. The holding in Health Formulas does not support Plaintiffs' argument, and Plaintiffs' choice to include the net revenues of a non-party in their calculation further shows that their approximation of unjust gains is not reasonable.
B. Injunctive and Ancillary Relief
15 U.S.C. § 53(b)(2) provides: "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." Cases involving deceptive sales schemes violating § 45(a) qualify as proper cases for injunctive relief. See Gem Merch. Corp., 87 F.3d at 468. "Permanent injunctions may be appropriate, even where a defendant's conduct has ceased, if 'the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.' " FTC v. Lanier Law, LLC, 194 F. Supp. 3d 1238, 1288 (M.D. Fla. 2016) (citation omitted). These injunctions must "bear a reasonable relation to the unlawful practices found to exist." Id. The Court has an "unqualified grant of statutory authority" to issue "the full range of equitable remedies." [F.T.C. v.] Wash. Data Res., [Inc.], 704 F.3d [1323] at 1326 [ (2013) ].
The Court granted part of the FTC's requested prohibitory injunctive relief in its Order on summary judgment, later vacating that injunctive relief on the FTC's concession that the ordered relief was too broad to qualify as a permanent injunction under Fed. R. Civ. P. 65(d)(1). (See Docket No. 339.) However, as stated in the summary judgment Order, injunctive relief is appropriate due to Defendants' liability under the FTC Act and a reasonable likelihood of future violations. (See Docket No. 330.) Defendants employed similar deceptive sales tactics during their time with a previous employer (id. at 11), and "have made no assurances against future violations, and continue to deny the wrongfulness of their conduct."
*1143 FTC v. Lanier Law, LLC, 194 F. Supp. 3d 1238, 1289 (M.D. Fla. 2016). Because the FTC provided "proper proof" that a permanent injunction is necessary at the summary judgment stage, the Court will enter a new injunction with added specificity to comport with the requirements of Fed. R. Civ. P. 65(d).
The FTC provided a proposed order with more specific permanent injunctive and ancillary relief. (Docket No. 398-1.) However, the parties failed to present argument on non-monetary injunctive and ancillary relief at trial or in their post-trial briefs. To determine the scope of permanent injunctive relief, district courts in the Eleventh Circuit routinely request proposed final orders from the FTC and a response from the defendant.[2] Accordingly, the Court requests that Defendants file a response to the relevant portions of Plaintiffs' proposed final order within seven days of the date of this Order.
CONCLUSION
While exactitude is not required, Plaintiffs' approximation of Defendants' unjust gains must still be reasonable. Given the lack of precision in Plaintiffs' methodology, the information available to Plaintiffs that they chose not to use, the confusion surrounding Plaintiffs' final calculation for disgorgement, and the inclusion of funds from a non-party, Plaintiffs have failed to establish a reasonable approximation of unjust gains. Plaintiffs are therefore not entitled to monetary relief.
Accordingly, IT IS HEREBY ORDERED that :
1. Plaintiffs have failed to present a reasonable approximation of Defendants' unjust enrichment, and therefore disgorgement is not a proper remedy under 15 U.S.C. § 53(b) ;
2. Defendants shall have seven days from the date of this Order to file a response to Plaintiffs' proposed final order (Docket No. 398-1) so that the Court may determine the appropriate parameters of permanent injunctive and ancillary relief; and
3. To the extent the Court did not contemporaneously rule on Motions the parties brought at trial, those outstanding Motions are DENIED .

See Life Mgmt. Servs., 350 F. Supp. 3d at 1274 (citations omitted) ("Mr. George calculated restitution based on two Microsoft Excel spreadsheets obtained from Defendants' office, which were created by Defendants to track their customers' payments.")

See FTC v. Lanier Law, LLC, 194 F. Supp. 3d 1238, 1289 (M.D. Fla. 2016) ; FTC v. Direct Benefits Group, LLC, No. 6:11cv1186, 2013 WL 3771322, at *21 (M.D. Fla. 2013) ; FTC v. Alcoholism Cure Corporation, No. 3:10cv266, 2011 WL 13137951, at *69 (M.D. Fla. 2011) ; FTC v. Nat'l Urological Grp., Inc., 645 F. Supp. 2d 1167, 1215 (N.D. Ga. 2008).