[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13569
Non-Argument Calendar
_____

D.C. Docket No. 0:09-cv-61840-JJO

FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

versus

STEPHEN LALONDE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 23, 2013)

Before DUBINA, HULL, and FAY, Circuit Judges.

PER CURIAM:

Stephen Lalonde, proceeding *pro se*, appeals from a magistrate judge's grant

of summary judgment in favor of the Federal Trade Commission ("FTC") on its

claims that Lalonde violated the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679b(a)(3), (b); the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(4); and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). We affirm.

## I.

In November 2009, the FTC filed a complaint against Lalonde and others, including 1st Guaranty Mortgage Corp. ("1st Guaranty"), Crossland Credit Consulting Corp. ("Crossland"), Scoreleaper, LLC ("Scoreleaper"), and Spectrum Title, Inc. ("Spectrum") (collectively "the corporate defendants"). Counts 1 through 4 of the complaint alleged that Lalonde and others violated the CROA, 15 U.S.C. § 1679b(a)(3), when they made false or misleading representations to induce consumers to purchase their credit repair services. Count 2 alleged that Lalonde and others violated the CROA, 15 U.S.C. § 1679b(b), when they received money or other valuable consideration for credit repair services before such services were fully performed. Count 3 alleged that Lalonde and others violated the TSR where they guaranteed or represented that they could obtain loans or other extensions of credit with a high likelihood of success, and requested or received advanced payment. Count 4 reiterated the factual allegations in Count 1 and claimed that the false representations violated the FTC Act. Count 5 alleged that Lalonde and others violated the FTC Act when they falsely represented that they

2

would obtain refinanced home mortgages for consumers and use the proceeds of those loans to pay off consumers' existing mortgages.  Count 6 alleged that Lalonde and others violated the FTC Act when they falsely represented that they would obtain mortgage loan modifications for consumers.

The parties consented to disposition of the case by a magistrate judge.  In December 2009, Lalonde and the FTC stipulated to a preliminary injunction. The preliminary injunction included an asset freeze of entities owned or controlled by Lalonde, which included the corporate defendants and was later expanded to nonparties CapSouth, L.L.C. ("CapSouth") and Crossland Property Management, Inc. ("CPM").  Additionally, pursuant to the stipulated preliminary injunction, the magistrate appointed a receiver for the corporate defendants, and the FTC was granted leave to conduct expedited discovery.  Shortly after the entry of the preliminary injunction, Lalonde was sentenced to 60 months of imprisonment and ordered to pay over $1.5 million in a criminal case based on the allegations underlying Count 5 of the FTC's compliant.

In April 2010, Lalonde filed a motion for the partial release of his assets in order to defend himself in the civil case ("Motion for Partial Release of Assets"). The magistrate denied Lalonde's Motion for Partial Release of Assets because, *inter alia*, Lalonde had consented to the entry of the preliminary injunction.

Lalonde subsequently filed several motions relating to discovery and

3

scheduling issues.  The magistrate ruled on these motions and extended the final discovery deadline to July 30, 2010.  On August 9, 2010, Lalonde filed a motion to further extend that deadline by 90 days ("First Motion to Extend Discovery"), but the magistrate denied the motion because Lalonde had not established good cause for further modifying the case management schedule.

The FTC moved for summary judgment as to all six counts in the complaint. Lalonde then filed a motion to proceed *in forma pauperis* ("IFP"), 28 U.S.C. § 1915, and requested that the magistrate appoint counsel to represent Lalonde due to the complex nature of the case and the potential monetary judgment that could be rendered against him.  The magistrate denied Lalonde's motion because he had "intimate familiarity" with the facts of the case and had demonstrated that he could present his defense to the court.

In December 2010, Lalonde filed a memorandum opposing summary judgment and a motion for reconsideration of his First Motion to Extend Discovery.  In his motion for reconsideration he attached a signed statement setting forth what additional discovery would show.  The magistrate determined that, because Lalonde had not been diligent in conducting discovery, an extension of time was not warranted.

After the FTC replied to Lalonde's response to its summary judgment motion, Lalonde filed a sur-reply.  He also filed a "Supplemental Filing with

4

Exhibits," which included the unsigned interrogatory responses of Michael Ammundsen, an ex-employee of companies not part of the instant action. The magistrate ordered stricken Lalonde's sur-reply and his supplemental filing because Lalonde did not raise any new issues that would justify a sur-reply.

In ruling on the FTC's summary judgment motion, the magistrate determined that Lalonde, acting through the corporate defendants, had violated the CROA, the TSR, and the FTC Act as alleged in all six counts of the FTC's complaint. The magistrate determined that Lalonde was individually liable for the violations alleged in Counts 1 through 4 and 6 because he owned or controlled the corporate defendants, he was present at the business premises of his companies, and he monitored the activities of his sales staff and managers. Lalonde was individually liable for the violation alleged in Count 5, in light of his guilty plea and the facts to which he stipulated in the related criminal case. The magistrate entered a permanent injunction banning Lalonde from the mortgage, credit repair, loan modification, and telemarketing businesses due to Lalonde's repeated fraudulent and unlawful conduct. The magistrate further ordered Lalonde to pay $2,663,515 in disgorgement and restitution.

Lalonde filed a motion for reconsideration of several of his filings. Attached to his motion was an affidavit prepared and signed by Ammundsen in May 2011. The magistrate denied Lalonde's motion for reconsideration and ordered stricken

Ammundsen's affidavit because Lalonde failed to present any evidence showing that it could not have been obtained timely through due diligence.

On appeal, Lalonde raises 15 different issues. We have consolidated some of the challenges. In Part II we discuss the issues surrounding the asset freeze. In Part III we discuss the magistrate's decision not to appoint counsel. In Part IV we discuss Lalonde's challenges to discovery and scheduling rulings. In Part V we review the grant of summary judgment in favor of the FTC. In Part VI we discuss the monetary and injunctive relief.

## II.

Lalonde first argues that the magistrate abused his discretion by ordering an asset freeze on the assets of non-parties CapSouth and CPM because a federal court only has the power to enter a binding judgment as to those parties before it. Lalonde also argues the magistrate should have released $10,000 of the frozen assets for Lalonde to defend himself.

We review an asset freeze for an abuse of discretion. *CFTC v. Levy*, 541 F.3d 1102, 1110 (11th Cir. 2008). We review a district court's ruling on a Fed.R.Civ.P. 60(b) ("Rule 60(b)") motion for an abuse of discretion. *Willard v. Fairfield S. Co.*, 472 F.3d 817, 821 (11th Cir. 2006). *Pro se* pleadings are held to a less stringent standard than those that are drafted by attorneys and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

Incident to its express statutory authority under section 13(b) of the FTC Act to grant a permanent injunction, a district court has the inherent power to grant ancillary relief, including freezing assets and appointing a receiver. *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984); 15 U.S.C. § 53(b). A district court may freeze a defendant's assets to ensure the adequacy of a disgorgement remedy. *Levy*, 541 F.3d at 114. However, "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994) (quotation and alteration omitted).

A civil litigant has the right to retain counsel of his choice under the Fifth Amendment's Due Process Clause. *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1117–18 (5th Cir. 1980). The Ninth Circuit has persuasively held that the right to retain counsel does not require the release of frozen assets so that a defendant in a civil case may hire attorneys or experts, or otherwise defend his claim. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("A district court may . . . forbid or limit payment of attorney fees out of frozen assets.").

As a general rule, a party does not have standing to appeal an order or judgment to which he consented. *See Hofmann v. De Marchena Kaluche &*

7

*Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011).  A party may seek modification

of a consent order under Rule 60(b), which provides relief from a judgment or

order for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).  To receive relief under Rule 60(b)(6), the movant must show

"that the circumstances are sufficiently extraordinary to warrant relief."  *Galbert v.*

*W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013) (quotation omitted).

First, the magistrate had the authority to enter the order freezing the assets of

the non-parties because a district court's equitable power extends to ordering an

asset freeze on non-parties in active concert or participation with the parties.  *See*

*FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996); Fed.R.Civ.P.

65(d)(2).  Lalonde lacks standing to further challenge the magistrate's freeze of

CapSouth's and CPM's assets because he consented to the freeze.  We liberally

construe Lalonde's later requests to partially release the assets of CapSouth or

CPM as requests for Rule 60(b) relief from the stipulated preliminary injunction.

Lalonde has not shown that he was entitled to Rule 60(b) relief.  Lalonde's

claim that the funds of CapSouth and CPM were necessary for his defense does not

satisfy any of the grounds for relief from the stipulated order set forth in Rule

8

60(b)(1)–(5).  Additionally, Lalonde has not shown he is entitled to Rule 60(b)(6) relief.  Lalonde had no right to use the frozen assets for his defense. *See Noble Metals*, 67 F.3d at 775. His other arguments amount to an attempt to relitigate an asset freeze to which he consented.  These are not circumstances sufficiently extraordinary to merit relief. *See Galbert*, 715 F.3d at 1295.  Accordingly, Lalonde failed to show that the magistrate was required to vacate the stipulated order freezing the assets of CapSouth and CPM.

## III.

Lalonde next argues that the magistrate erred by denying Lalonde's request to proceed IFP and have counsel appointed.  In his reply brief, Lalonde argues that the magistrate should have appointed counsel to represent Lalonde because he was unable to effectively present his case and unable to conduct effective discovery due to his incarceration.

We review a district court's denial of a motion for leave to proceed IFP for an abuse of discretion.  *See Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004).  We review a district court's decision not to appoint counsel for an abuse of discretion.  *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007).  "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010)

(quotation omitted).

A court may request an attorney to represent a person that is unable to afford counsel.  28 U.S.C. § 1915(e)(1).  However, a civil litigant has no constitutional right to the appointment of counsel.  *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992).  A court may only appoint counsel in a civil case where exceptional circumstances exist, and whether such circumstances exist is committed to the district court's discretion.  *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).  "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court."  *Id.* at 1065 (quotation omitted).

Lalonde first argues he wanted to proceed IFP in order to receive copies of documents, postage, and legal supplies free of charge. This argument is meritless, as § 1915 does not provide for such resources.  *See* 28 U.S.C. § 1915(c).

Lalonde also requested the appointment of counsel.  The FTC's action is somewhat complicated, however, Lalonde owned or controlled the corporate defendants, and the magistrate was entitled to find Lalonde had "intimate familiarity" with the facts of the case.  Further, Lalonde had shown that he was capable of presenting his legal arguments to the magistrate and defending the action, as demonstrated by the voluminous pleadings that he filed in the district court.  Lalonde's incarceration did pose difficulties with respect to conducting discovery, as he was limited in using the telephone to conduct depositions.

However, written depositions remained an option available to Lalonde in order for him to present his case, such that he was not completely foreclosed from conducting discovery. *See* Fed.R.Civ.P. 31. Although the appointment of counsel may have sharpened the issues presented to the magistrate, we review the magistrate's decision for an abuse of discretion, and balancing the relevant factors, we conclude that Lalonde has not shown that the magistrate committed a clear error of judgment, such that he abused his discretion. *See Smith*, 713 F.3d at 1063; *Norelus*, 628 F.3d at 1280.

IV.

Lalonde also argues that the magistrate erred in the ruling on five different discovery and scheduling matters. First, Lalonde claims the magistrate improperly ordered expedited discovery because Lalonde was unable to meet the deadlines due to the limitations posed by his incarceration, his lack of funds, and deception by the FTC. Second, Lalonde claims that the magistrate improperly denied Lalonde's request for an extension of the discovery period. Third, Lalonde argues that the magistrate improperly denied Lalonde's request for a stay of the case until he was transferred from the county jail to a prison that had adequate law-library resources. Fourth, Lalonde argues that the magistrate erred in denying Lalonde's request for the receiver to send him all of the records that were "critical" to his defense. Finally, Lalonde argues that the magistrate improperly struck the additional and

11

supplemental exhibits supporting Lalonde's opposition to summary judgment.

We review a district court's discovery rulings for an abuse of discretion. *Smith*, 487 F.3d at 1365. We review a district court's application of local rules for an abuse of discretion. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009). We review a district court's decision to strike an affidavit as untimely for an abuse of discretion. *Useden v. Acker*, 947 F.2d 1563, 1571–72 (11th Cir. 1991).

District courts are required to "enter a scheduling order that limits the time to . . . complete discovery, and file motions," and the scheduling order may include other "appropriate matters." Fed.R.Civ.P. 16(b)(1), (b)(3)(A). Such orders may be modified "only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quotation omitted). Under Fed.R.Civ.P. 6(b)(1)(B), the court may, for good cause, extend the time period for filing a motion after the deadline has expired as long as the party failed to act because of excusable neglect. A district court's decision to hold litigants to the clear terms of scheduling orders is not an abuse of discretion. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

Under Fed.R.Civ.P. 56 ("Rule 56"), if the party opposing summary judgment shows by affidavit or declaration that he cannot present facts essential to

his opposition, the court may: (1) defer the motion for summary judgment; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.  Fed.R.Civ.P. 56(d).[1]  "Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [Rule 56(d)] by presenting specific facts explaining the inability to make a substantive response."  *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) (quotation omitted).

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ."  Fed.R.Civ.P. 26(b)(1). Nevertheless, the district court must "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P. 26(b)(2)(C)(iii).

While prisoners have a right of access to the courts under the Fourteenth Amendment, and this right requires prison authorities to provide prisoners with adequate law libraries or adequate assistance from persons trained in the law, a prisoner must show an actual injury as a prerequisite to raising a claim that his right to access the courts was violated.  *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998).  Specifically, a prisoner alleging a violation of his right of access to the courts "must show actual injury in the pursuit of specific types of

---

[1]  Subsection (f) of Rule 56 was redesignated as subsection (d) in the 2010 amendments.

13

nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Id.* "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (quotation and emphasis omitted).

Here, the magistrate did not abuse his discretion with respect to the entry of the expedited scheduling order because Lalonde agreed to the order, which provided that it could only be modified on a showing of good cause.

Next, the magistrate did not abuse his discretion in denying Lalonde's First Motion to Extend Discovery, which was signed and mailed on August 9, 2010, after the July 30, 2010 deadline for the completion of all discovery had passed. Although Lalonde argued in the motion that he could not meet the deadlines due to his incarceration, the magistrate had already taken his incarceration into account, as demonstrated by prior extensions the magistrate had granted. Moreover, impairment of Lalonde's civil litigating capacity was one of the constitutional consequences of his incarceration. *See Wilson*, 163 F.3d at 1290. Thus, the magistrate did not abuse his discretion with respect to this issue because Lalonde did not show that the deadline for discovery could not be met despite his diligence. *See Sosa*, 133 F.3d at 1418. For the same reasons, the magistrate did not abuse his discretion by denying Lalonde's December 2010 motion for reconsideration.

Next, the magistrate did not abuse his discretion in denying Lalonde's

14

motion to compel the receiver to provide him with all paper and electronic files it had in its possession. The magistrate provided Lalonde with the right to use a proxy to inspect all of the documents, records, and files in the receiver's possession. Although Lalonde now argues on appeal that he did not have a proxy available to him, Lalonde did not raise this issue prior to the magistrate's ruling on the FTC's summary judgment ruling. Additionally, Lalonde could receive specific documents from the receiver for ten cents a page. Moreover, Lalonde concedes on appeal that, prior to his incarceration, he was provided with unlimited access to the documents in the receiver's possession for a month-long period. Thus, the magistrate did not abuse his discretion in declining to order the receiver to provide Lalonde with all of the documents in its possession, as the burden of satisfying such a request outweighed its benefit. *See* Fed.R.Civ.P. 26(b)(2)(C)(iii).

Next, the magistrate did not abuse his discretion with respect to any of Lalonde's requests for stays in the case. In response to one of Lalonde's three motions to stay the case, the magistrate granted a three-month extension of the deadline for Lalonde to file a summary judgment response and stayed all other deadlines in the case. To the extent Lalonde sought an unlimited stay until he had access to what he considered adequate legal resources, the magistrate did not abuse his discretion in denying this request. *Cf. Wilson*, 163 F.3d at 1290.

The magistrate also did not abuse his discretion in striking Lalonde's sur-

15

replies because the FTC did not raise any new issues in its reply to Lalonde's response opposing summary judgment. *See* S.D. Fla. L.R. 7.1(c) (providing that a party may not file a sur-reply without prior leave of the court). The magistrate also did not abuse his discretion in striking the evidence attached to Lalonde's sur-replies, specifically Ammundsen's responses to the interrogatories and his affidavit. Lalonde conceded that he did not mail the interrogatories until August 8, 2010, after the close of all discovery, and he has provided no reason why he was unable to obtain Ammundsen's May 2011 affidavit any sooner. Thus, Lalonde has not shown excusable neglect with respect to his failure to timely file Ammundsen's responses to the interrogatories or Ammundsen's affidavit. *See* Fed.R.Civ.P. 6(b). Accordingly, the magistrate did not abuse his discretion with respect to any of the challenged rulings.

## V.

We review *de novo* a district court's grant of summary judgment. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276 (11th Cir. 2001). Summary judgment should be granted where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). We may affirm the district court's judgment on any ground that finds support in the record. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

A.

Lalonde argues that, with respect to Counts 1, 2, 4, and 6 of the FTC's complaint, the FTC failed to prove that he "participated directly" in any of the deceptive activities of the corporate defendants, such that he should be held individually liable for those activities. Lalonde claims that it was "company policy not to lie or guarantee," and he did not monitor consumer calls. Lalonde further argues that consumers and the corporate defendants entered into contracts before any services were performed and the contracts set forth the "procedures that employees and consumers were required to adhere to." Lalonde argues that "money was regularly refunded" to consumers who were not satisfied.

Lalonde further argues that the evidence shows that the managers of the corporate defendants acted alone and without authority with respect to illegal activity. Lalonde claims that managers and employees of the corporate defendants stole company data and started a competing company and that one of the managers used marijuana with the employees of the corporate defendants. Lalonde asserts that he terminated all of the managers due to their improper actions. Lalonde claims that he discredited the FTC's expert, as he showed that a credit score of 620 was not needed to obtain the government loans being offered to consumers, and he showed that credit scoring analytics were not proprietary. Lalonde also argues that he was unable to obtain loans for consumers due to the "chaos" in the lending

17

industry, and not because the defendants were misleading consumers.  He also argues that the magistrate failed to properly consider all of the materials that Lalonde submitted in opposition of summary judgment, including his statement of controverted facts.

The CROA prohibits unfair or deceptive advertising and business practices by credit repair organizations.  15 U.S.C. § 1679(b)(2).  The CROA defines a "credit repair organization" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating . . . .

15 U.S.C. § 1679a(3)(A).  Specifically, the CROA prohibits credit repair organizations from making any false or misleading representations of their services.  15 U.S.C. § 1679b(a)(3).  The CROA also prohibits charging or receiving money or other valuable consideration for the performance of credit repair services before such services are fully performed.  15 U.S.C. § 1679b(b).  Violations of the CROA constitute violations of section 5 of the FTC Act.  15 U.S.C. § 1679h(b)(1).

Section 5(a) of the FTC Act provides in pertinent part that "deceptive acts or practices in or affecting commerce" are unlawful.  15 U.S.C. § 45(a)(1), (2).  To establish that an act or practice is deceptive, the FTC must show that (1) there was

a representation or omission, (2) the representation or omission was likely to mislead consumers acting reasonably under the circumstances, and (3) the representation or omission was material. *See FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

Once the FTC has established corporate liability, the FTC may establish individual liability by showing, "that the individual defendants participated directly in the practices or acts or had authority to control them . . . [and] had some knowledge of the practices." *Gem Merch. Corp.*, 87 F.3d at 470 (internal quotation marks omitted).

Here, the FTC's undisputed evidence established that the corporate defendants had committed the violations at issue in the complaint. First, with respect to Counts 1 and 2, 1st Guaranty, Crossland, and Scoreleaper qualified as credit repair organizations under the CROA because they used the internet and telephones to purportedly provide credit repair services to improve their consumers' credit records, credit histories, or credit ratings. The undisputed evidence showed that the credit repair organizations violated the CROA, as alleged in Count 1 of the complaint, when their representatives made false or misleading representations of their services to consumers. Specifically, the declarations of ex-employees of 1st Guaranty show that its customers were generally individuals with

19

credit scores that were too low to obtain mortgages.[2]  Ex-employees of 1st

Guaranty declared that they would falsely state or imply to 1st Guaranty customers

that there was a "very high likelihood" that Crossland could raise the customers'

scores so that they could obtain mortgages.[3]

Although Lalonde argues that there was a policy in place that no salesperson

mislead a consumer, the undisputed evidence as a whole showed that the credit

repair organizations had a practice of falsely representing to consumers that there

was a high likelihood that the consumers' credit scores would be raised so that they

could obtain mortgages.  The undisputed evidence showed that the credit repair

organizations only closed four mortgages during the period the defendant

companies operated their credit repair scheme.  Further, although refunds may

have been provided to some consumers, this does not rebut evidence showing that

the corporate defendants misrepresented the credit repair services in order to

initially obtain fees from customers.  Lalonde argues that the lack of loan closings

was due to the "chaos" in the lending industry.  However, this claim only

---

[2]  Even if loans were available to individuals with credit scores of 580, as Lalonde claims, he has not submitted any evidence that any customer had a credit score of 580 or above, or that his companies were able to obtain such a loan for customers.

[3]  Lalonde filed in the district court a February 2009 contract that purported to be between Crossland and a Crossland customer. The contract stated that Crossland would attempt to remove "incorrect, misleading or unverifiable" information from the consumer's credit report and that Crossland could not guarantee a specific outcome.  This single contract does not create a genuine dispute as to any material fact because there is no evidence in the record demonstrating that this contract was regularly signed by customers of the corporate defendants, or that corporate defendants followed its terms.

illustrates the falsity of the credit repair organizations' representations that they could easily obtain mortgages for consumers. Moreover, the evidence showed that the credit repair organizations lacked the information necessary to truthfully claim that they could raise consumers' credit scores.

Next, the undisputed evidence showed that credit repair organizations violated the CROA as alleged in Count 2 because they did not start their credit repair services until consumers paid in full. Lalonde asserts that the credit repair services were not paid for until complete, but he did not cite evidence that supports this assertion.

The evidence concerning Count 4, alleging a violation of the FTC Act with respect to the trade practices of 1st Guaranty, Crossland, and Scoreleaper, is the same evidence summarized with respect to Count 1, and this evidence established that those companies' representations concerning their credit repair services were likely to mislead consumers acting reasonably under the circumstances. *See Tashman*, 318 F.3d at 1273. Lalonde does not challenge the magistrate's determination that those representations were material, and so the argument is abandoned. *See Irwin v. Hawk*, 40 F.3d 347, 347 n.1 (11th Cir. 1994).

Next, with respect to Count 6, an ex-employee of 1st Guaranty declared that he offered loan modification services to prospective consumers with credit problems and who had existing loans. The ex-employee further declared that 1st

21

Guaranty's employees described the company's loan modification services as highly successful and that there was a "very high probability" that consumers' loans could be favorably modified.  Further, consumers declared that Crossland represented to them that it would modify their loans, but Crossland never actually obtained loan modifications despite having been paid fees for such a service, and there is no evidence in the record that any of the corporate defendants obtained a loan modification for a consumer.  Additionally, the FTC's expert report stated that, given the deep analysis needed to determine if a consumer would be eligible for a favorable loan modification, 1st Guaranty and Crossland could not lawfully claim that they could secure a loan modification that would make mortgage payments more affordable based solely on phone conversations and a preliminary review of credit reports.  Based on the undisputed evidence set forth in the FTC's expert report, 1st Guaranty's and Crossland's representations concerning its loan modification services were misleading.  *See Tashman*, 318 F.3d at 1273.  Lalonde does not challenge the magistrate's determination that the representations were material.

Next, the magistrate did not err in holding Lalonde individually liable for the violations alleged in Counts 1, 2, 4, and 6.  First, the evidence showed that Lalonde had authority to control the actions of 1st Guaranty, Crossland, and Scoreleaper. The managers of 1st Guaranty and Crossland reported directly to Lalonde, and

22

Lalonde was the sole account holder of all of 1st Guaranty's, Crossland's, and Scoreleaper's bank accounts, with the exception of one of 1st Guaranty's accounts, where he was a joint signatory.

Further, the undisputed evidence also showed that Lalonde had actual knowledge of the deceptive trade practices, or at the very least, an awareness of a high probability of fraud along with an intentional avoidance of the truth.[4] Lalonde stipulated that he frequently communicated with his managers, and the evidence showed that he had the ability to monitor the calls of the sales staff. Lalonde also had access to information on all activities of the corporate defendants, such that he knew or should have known of the unlawful practices. Lalonde's argument about his ex-managers' and ex-employees' thefts and drug use is not relevant to whether Lalonde had knowledge of the corporate defendants' deceptive practices. Accordingly, Lalonde has not shown that the magistrate erred in granting summary judgment in favor of the FTC with respect to Counts 1, 2, 4, and 6.

## B.

Lalonde argues that the FTC failed to prove that he should be individually liable for any violation of the TSR. Lalonde further argues that all consumers

---

[4] Lalonde apparently intended his statement of controverted facts to be considered evidence, but the statement was unsworn, and was not made under penalty of perjury, so the magistrate could not consider it in determining whether summary judgment should be granted. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); 28 U.S.C. § 1746.

contacted the corporate defendants by way of advertisements, and the advertisements were "all compliant." He also argues that inbound telephone calls initiated by consumers were exempt from the TSR's coverage. In his reply brief, Lalonde argues that the February 2009 contract showed that consumers agreed that they sought out the company before hiring Crossland for credit repair services.

Under the TSR, "telemarketing" is defined as a program "which is conducted to induce the purchase of goods or services . . . by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(dd). A "telemarketer" is defined as a "person who, in connection with telemarketing, initiates or receives telephone calls to or from a consumer or donor." 16 C.F.R. § 310.2(cc).

Section 310.4(a)(4) of the TSR is violated when a seller or telemarketer engages in conduct involving "requesting or receiving payment of any fee . . . in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person." 16 C.F.R. § 310.4(a)(4). "[T]elephone calls initiated by a consumer" in response to an advertisement are ordinarily exempt from the TSR. 16 C.F.R. § 310.6(b)(5). The TSR, however, does cover inbound telemarketing where the calls are made "in response to . . . advertisements involving goods or services described in

24

[§ 310.4(a)(4)]." *Id.* A violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of section 5(a) of the FTC Act. *See* 15 U.S.C. §§ 57a(d)(3), 6102(c).

Here, 1st Guaranty, Crossland, and Scoreleaper were telemarketing by inducing the purchase of credit repair services by way of multiple telephones and interstate telephone calls. The undisputed evidence showed that inbound consumer calls were in response to advertisements concerning assistance in obtaining a loan, and thus those inbound calls were subject to the TSR. During the telemarketing calls, consumers made payments in order to have their credit scores repaired for the purposes of obtaining a mortgage from 1st Guaranty, after the telemarketers guaranteed or represented a high likelihood of success of obtaining the mortgage. Therefore, 1st Guaranty, Crossland, and Scoreleaper violated the TSR.

Lalonde is individually liable for the violation of the TSR because he had the ability to control the telemarketing program and knew or should have known of the violations by 1st Guaranty, Crossland, and Scoreleaper. Thus, the magistrate did not err in granting summary judgment in favor of the FTC with respect to the TSR violation alleged in Count 3.

## C.

Lalonde argues that the district court did not have jurisdiction over Count 5 of the complaint as it related to Lalonde, Spectrum, and 1st Guaranty because he

participated in Florida administrative proceedings concerning the activities underlying Count 5, and Count 5 was "duplicitous" of those proceedings.

Here, the district court did not lack jurisdiction over Lalonde or 1st Guaranty because they signed the Florida "Stipulation and Consent Agreement."[5] The State of Florida, Office of Financial Regulation simply agreed to forego state administrative proceedings against 1st Guaranty, Lalonde, and Spectrum for the violation of Florida law that occurred when Lalonde was convicted of federal offenses in 2009. The agreement had nothing to do with the FTC's enforcement of federal law concerning deceptive trade practices. Accordingly, Lalonde's argument as to this issue is without merit.

## VI.

Lalonde argues that the magistrate abused his discretion when he imposed permanent injunctive relief and monetary relief against Lalonde. Specifically, Lalonde argues that the magistrate improperly banned Lalonde from telemarketing activities because the corporate defendants were not engaging in telemarketing as defined by the TSR. Lalonde further argues that a ban on mortgage-related activity was improper and overreaching because the loans underlying Count 5 were originated by Delta Financial Corporation ("Delta"), not by 1st Guaranty. Lalonde contends that the magistrate erred when it combined the revenue of the corporate

---

[5] Spectrum was not a party to the state Stipulation and Consent Agreement.

26

defendants in determining the amount of restitution owed, as well as the amounts

that Michael Petroski, an ex-employee of the corporate defendants and a defendant

named in the instant FTC action, had stolen from the corporate defendants.

Construing Lalonde's arguments liberally, he asserts that the income from 1st

Guaranty was derived from "loan income," and not from loan modification

services or credit repair services and should not have been included in the

restitution award.  Lalonde further argues that the FTC was "double dipping" by

seeking restitution in his criminal case and disgorgement in the instant FTC action.

We review the district court's grant of injunctive relief for an abuse of

discretion.  *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003).  We

review a district court's order granting equitable monetary relief for an abuse of

discretion.  *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1325 (11th Cir. 2013).

Where a defendant has violated section 5 of the FTC Act and the TSR, the

FTC is entitled to seek relief under section 13(b) of the FTC Act.  *Id.* at 1326; 15

U.S.C. §§ 45, 53(b).  Under section 13(b) of the FTC Act, a district court may

exercise its inherent equitable power and is authorized to grant permanent

injunctions against practices that violate any of the laws enforced by the FTC.

*Gem Merch. Corp.*, 87 F.3d at 468; 15 U.S.C. § 53(b).  "Injunctive relief should be

limited in scope to the extent necessary to protect the interests of the parties."

*Keener*, 342 F.3d at 1269.  In reviewing the grant of a permanent injunction, the

27

test is whether "the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *See CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346–47 (11th Cir. 2008).

Section 13(b) also provides the district court with the power to order restitution and disgorgement. *Gem Merch. Corp.*, 87 F.3d at 468–70; 15 U.S.C. § 53(b). Disgorgement and restitution are measured by a defendant's unjust enrichment. *Wash. Data*, 704 F.3d at 1326. Net revenue (gross receipts minus refunds) is the measure of unjust enrichment under section 13(b) of the FTC Act. *Id.* at 1327.

First, Lalonde's argument that the magistrate improperly banned him from telemarketing on the basis that the corporate defendants did not engage in telemarketing, is without merit because the corporate defendants engaged in telemarketing, as discussed above. To the extent Lalonde asserts that the ban on mortgage-related activity is overly broad because Delta, not 1st Guaranty, "originated the loans," we reject his argument. Lalonde stipulated in the plea agreement in his criminal case that he deceived consumers by making representations as to how new mortgages would be disbursed, then failed to make the disbursements. It is undisputed that Lalonde was involved in the extensive mortgage refinancing scheme, notwithstanding any evidence showing that the actual loans originated with Delta.

28

With respect to the monetary relief the magistrate granted against Lalonde, the magistrate properly combined the "gross sales" or net revenue of the corporate defendants. *See Wash. Data*, 704 F.3d at 1327. Next, Lalonde offers no evidence to support his assertion that all of 1st Guaranty's revenue was from "loan income," such that the magistrate should not have included any of its revenue in the restitution award. The FTC's evidence included the declaration of a Supervisory Investigator for the FTC who declared that, after reviewing 1st Guaranty's financial statements, he determined that $254,881 of 1st Guaranty's gross revenue was attributable to credit repair services.

To the extent Lalonde argues that the monetary judgment against him included amounts that Petroski "stole" from him, Lalonde has not presented any evidence in support of this argument or otherwise quantified how the monetary judgment should be modified. Further, the magistrate specifically held Petroski liable for $26,000 for funds that he independently obtained from consumers, and Lalonde was not held liable for this amount. Finally, the magistrate's total judgment against Lalonde subtracted the payments Lalonde made with respect to the criminal monetary provisions in his criminal case. Thus, to the extent Lalonde argues that the FTC was "double dipping" by seeking restitution to compensate victims, where Lalonde had already been ordered to pay restitution with respect to his criminal case, his argument is without merit. Accordingly, the magistrate did

29

not abuse his discretion with respect to the ordered injunctive and monetary relief.

**AFFIRMED.**