FILED
United States Court of Appeals
Tenth Circuit

January 23, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FEDERAL TRADE COMMISSION,

    Plaintiff - Appellee,

v.

ELITE IT PARTNERS, INC., a Utah corporation, d/b/a Elite IT Home; JAMES MICHAEL MARTINOS, individually and as an officer of Elite IT Partners, Inc.,

    Defendants - Appellants.

No. 23-4009

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:19-CV-00125-RJS)**

_____

Caleb Kruckenberg, Pacific Legal Foundation, (John F. Kerkhoff, Pacific Legal Foundation, with him on the briefs), Arlington, VA, for Defendants-Appellants.

Michael D. Bergman, Federal Trade Commission (Anisha S. Dasgupta, General Counsel, and Mariel Goetz, Acting Director of Litigation, with him on the briefs), Washington, D.C., for Plaintiff-Appellee.

_____

Before **BACHARACH**, **BRISCOE**, and **McHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of the Federal Trade Commission's suit against Mr. James Martinos and Elite IT Partners. In the suit, the FTC alleged a fraudulent scheme to sell unnecessary services. The parties settled the suit by stipulating to a judgment that

- provided equitable monetary relief under § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) and

- waived future challenges.

Roughly a year after entry of the stipulated judgment, the Supreme Court held in *AMG Capital Management, LLC v. FTC* that § 13(b) doesn't allow equitable monetary relief. 593 U.S. 67, 75–78 (2021). The new interpretation of § 13(b) led the defendants to request vacatur of the stipulated judgment under Federal Rule of Civil Procedure 60(b)(6).[1] The district court denied the motion, reasoning that

- the change in case law had arisen in a factually unrelated case and

- the defendants hadn't presented other circumstances warranting vacatur.

The defendants appeal, and we address two issues:

1. **Waiver:** The defendants agreed to waive their right to challenge or contest the stipulated judgment. Does this waiver

---

[1] The defendants also invoked Rule 60(b)(5), but they don't address this rule in the appeal.

prohibit the defendants from arguing that the stipulated judgment was invalid? We answer *yes*.

2. **Change in case law:** The defendants moved to vacate the stipulated judgment based on a change in the case law. We've allowed vacatur of the judgment for a change in case law only when the change arose in a factually related case. Here the change in case law took place in an unrelated case. Despite the absence of a relationship, can the defendants base vacatur on a change in the case law? We answer *no*.

## 1.    The defendants waived the right to collaterally challenge the stipulated judgment.

The stipulated judgment provides that the defendants "waive[d] all rights to . . . challenge or contest the validity of this Order." Appellants' App'x at 120.[2] We must consider

- whether to consider the waiver clause and

- whether the clause applies to the defendants' appellate arguments.

We answer *yes* to both questions.

---

[2]    In the stipulated judgment, the defendants also agreed "not [to] seek the return of any assets." Appellants' App'x at 126. In the motion to vacate, however, the defendants seek return of the money already collected under the judgment. The FTC argues that the defendants waived this request by agreeing not to seek return of funds. We need not address this argument because the defendants more broadly waived the right to challenge or contest the validity of the stipulated judgment.

**a.** **We should consider the waiver clause as an alternative basis to affirm.**

The district court didn't address the waiver clause. But we can affirm on any ground adequately supported by the record. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). In deciding whether to consider affirmance on a different ground, we address

- whether the issue was briefed in district court and on appeal,

- whether the issue is legal or factual, and

- whether the record is adequately developed.

*Id.* These factors support consideration.

First, the parties briefed the impact of the waiver clause both in district court and on appeal.[3]

---

[3]    The waiver clause prevents the defendants from contesting or challenging the validity of the stipulated judgment. *See* p. 3, above. This clause could potentially cover either

- the filing of a motion to vacate in district court or

- an appeal from the denial of vacatur.

The briefing in district court addressed the waiver that applied there: the filing of a motion to vacate. We are addressing the applicability of the waiver clause to an appeal from the denial of that motion. Until this appeal, the parties and district court had no reason to address the applicability of the waiver clause to an appeal from the district court's ruling.

Second, the questions are legal, not factual. For example, the defendants characterize the district court's reliance on a "categorical bar" as a legal error. Appellants' Reply Br. at 4.[4]

Third, we consider whether the record is adequately developed. *See* p. 4, above. Here the parties rely solely on the language in the stipulated judgment rather than on any extrinsic evidence. So the record appears adequately developed.

Because each factor supports consideration, we address the applicability of the waiver clause.

### b.    The waiver clause covers the defendants' appellate arguments.

The defendants waived their appellate arguments because these arguments "challenge or contest the validity of" the stipulated judgment. For example, the defendants argue that *AMG* shows that the stipulated judgment was never valid:

- "The judgment at issue is unlawful." Appellants' Reply Br. at 1.

- "*AMG* recognized that the original judgment was illegal when it was issued." *Id.* at 9 (subheading).

---

[4]    The defendants elsewhere argue that the issue turns on interpretation of a settlement agreement. But the language appears in an unambiguous judgment (rather than a typical settlement agreement), so interpretation involves a question of law. *See United States v. DAS Corp.*, 18 F.4th 1032, 1040 (9th Cir. 2021) ("[T]he interpretation of a judgment presents a question of law.").

- "And that judgment came only because the FTC sought to exercise a power it never had." Appellants' Opening Br. at 5.

- "The FTC didn't have the power to demand and then obtain disgorgement." *Id.* at 44.

- "All parties agree that the Federal Trade Commission's $13.5 million judgment against Appellants, James Martinos and his company, Elite IT Partners, Inc., should never have been issued." Appellants' Reply Br. at 1.

- "This wasn't merely a bad bargain, it was an *illegal* agreement, and one the court lacked the authority to accept." *Id.* at 8 (emphasis in original).

The defendants present four arguments to sidestep the waiver clause:

1.    The defendants aren't contesting the validity of the stipulated judgment under the case law that existed earlier.

2.    The parties entered the stipulated judgment based on a misunderstanding of the law.

3.    The district court could modify the stipulated judgment, and the federal rules provide broad equitable power to vacate the judgment.

4.    Rule 60(b)(6) allows reopening of "final agreements, no matter what they say, when certain conditions are present." Appellants' Reply Br. at 5.

These arguments are unpersuasive.

First, the defendants acknowledge that the stipulated judgment was valid under earlier case law. But the defendants argue that the Supreme Court's subsequent opinion in *AMG* rendered the stipulated judgment invalid from the outset. *See* pp. 5–6, above. In this argument, the

defendants are *challenging* or *contesting* the validity of the stipulated judgment.

Second, the defendants contend that the parties based the stipulation on a misunderstanding of the law. This argument rests on unproven assumptions. When the parties entered the stipulation, a circuit split existed on the availability of equitable monetary relief under § 13(b). The Seventh Circuit had held that § 13(b) didn't allow equitable monetary relief. *FTC v. Credit Bur. Ctr., LLC*, 937 F.3d 764, 786 (7th Cir. 2019). Seven circuits had said the opposite. *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *FTC v. Ross*, 743 F.3d 886, 890–92 (4th Cir. 2014); *FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711, 717–20 (5th Cir. 1982); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1315 (8th Cir. 1991); *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 599 (9th Cir. 2016); *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996).

The circuit split had led to the filing of a certiorari petition before the defendants entered the stipulation. Petition for Writ of Certiorari, *AMG Cap. Mgt., LLC v. FTC*, No. 19-508 (U.S. Oct. 18, 2019). The petition itself underscored the circuit split, *id.* at 11–15, so the defendants could have foreseen a change in the case law. *See United States v. Rodgers*, 466 U.S. 475, 484 (1984) (stating that a change in the law is foreseeable when a circuit split exists on statutory construction). Given that possibility, we

7

have no way of knowing whether the defendants expected a change in the case law. At a minimum, however, the pending request for certiorari signaled a possible change in the interpretation of § 13(b).

Third, the defendants point out that the district court had the power to vacate the judgment because

- the court retained jurisdiction and

- the federal rules provided equitable authority to vacate an order.

But the defendants don't explain how retention of jurisdiction or equitable authority would prevent a waiver.[5]

Though a court might enjoy broad jurisdiction and equitable power, a party can waive rights that the court could otherwise protect. For example, courts can entertain appeals or collateral challenges to federal convictions. 28 U.S.C. § 2106 (appeals), § 2255 (collateral challenges). But parties can waive their rights to

- appeal final orders, *United States v. Hahn*, 359 F.3d 1315, 1329 (10th Cir. 2004) (en banc) (per curiam), or

- collaterally challenge federal convictions, *United States v. Cockerham*, 237 F.3d 1179, 1182–83 (10th Cir. 2001).

---

[5]     The defendants' argument consists solely of two sentences: "More importantly, the Order recognized that it could be modified by the district court—the very last provision said 'that th[e] Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.' That language covers the situation here." Appellants' Reply Br. at 5 (quoting Appellants' App'x at 134).

8

In the same way, a party can freely waive the right to invoke the court's jurisdiction or equitable authority. *See Johnson v. Spencer*, 950 F.3d 680, 703 (10th Cir. 2020) (stating that a settlement agreement can constitute a free choice undermining the right to seek vacatur under Rule 60(b)(6)).

Fourth, the defendants assert that Rule 60(b) allows vacatur regardless of any contrary agreements. For this assertion, the defendants supply no authority.

* * *

We conclude that the waiver clause applies because the defendants' appellate arguments *challenge* or *contest* the validity of the stipulated judgment.

## 2.    The district court didn't erroneously apply a "categorical bar."

Given the importance of the underlying issue, we address the merits to explain that the defendants would not have prevailed even if they hadn't waived their appellate arguments.

The defendants argue that the district court erroneously applied a "categorical bar" to relief under Rule 60(b)(6). For this argument, the defendants try to squeeze the district court's ruling into our opinion in *Johnson v. Spencer*, 950 F.3d 680 (10th Cir. 2020).[6] But *Johnson* doesn't apply.

---

[6]    The defendants repeatedly purport to quote *Johnson* for the "explan[ation] that a district court's 'application of categorical rule' in a

> **a.** **The defendants present two different arguments to analogize our case to *Johnson*.**

In *Johnson*, the district court denied relief on the ground that Rule 60(b)(6) categorically disallows vacatur on claims for damages. *Id.* at 701–02. We reversed, reasoning that the district court couldn't categorically disallow vacatur on damage claims. *Id.* at 702–03. Based on *Johnson*, the defendants argue that the district court erred by relying on a "categorical bar."

But the defendants are inconsistent in what they regard as the "categorical bar." They sometimes argue that the district court erroneously applied a "categorical bar" by improperly limiting vacatur when a party relies on a change in the case law in a factually unrelated case:

- "Relevant here, the [district] court held that Rule 60(b)(6) is categorically barred based on a change in the law for factually 'unrelated cases.'" Appellants' Opening Br. at 13.

- "Instead, the court adopted a categorical rule that unrelated cases can *never* win a Rule 60(b)(6) motion based on a change in the law." *Id.* at 14 (emphasis in original).

---

Rule 60(b)(6) analysis is *per se* abuse of discretion." Appellants' Opening Br. at 15, 17, 31, 32, 33; Appellants' Reply Br. at 4, 16. But *Johnson* never used the term *categorical rule*. The Court instead cited a First Circuit opinion that had used the terms *categorical rule* and *categorical bar*. *Ungar v. Palestinian Liberation Org.*, 599 F.3d 79, 81–87 (1st Cir. 2010).

Other times, the defendants argue that the district court erred by categorically declining to consider the pertinent equitable considerations[7]:

- "The district court was wrong to categorically bar Mr. Martinos and [his company] from even the equitable considerations at play in Rule 60(b)(6)." Appellants' Reply Br. at 9.

- "In other words, the district court adopted a categorical rule that Rule 60 could apply only if a case has a factual relationship with *AMG*. . . . Instead, courts must consider a range of equitable factors to determine whether a judgment should be reopened when a change in the law occurs." Appellants' Opening Br. at 6.

- "Yet the district court adopted a categorical rule barring relief for almost any litigant. Instead of hewing to Rule 60's equitable lineage by considering all circumstances here, the court focused on only one: Whether [this case] was a 'related case' to *AMG*. It ignored any other factor—finality, comity, injustice, hardship, diligence—to rule that only a *single* type of case can earn Rule 60(b)(6) relief." Appellants' Opening Br. at 22–23 (emphasis in original).[8]

Under either characterization of the defendants' argument, it would fail. The first characterization of the argument fails because the district court correctly interpreted our case law: The defendants relied almost

---

[7]    At oral argument, the court asked defense counsel to clarify the "categorical bar" argument. Counsel again presented both forms of the argument.

[8]    The defendants sometimes blend the arguments, characterizing the categorical bar as a refusal to consider the equities or a change in the law in unrelated cases: "Yet the district court never considered the equities. Instead, it adopted a categorical rule that 'a post-judgment change in the law only justifies 60(b)(6) relief when it arises in a related case.'" Appellants' Reply Br. at 2 (quoting Appellants' App'x at 288).

solely on a change in the case law under *AMG*, and that change couldn't justify vacatur because the cases aren't factually related. The second characterization of the argument fails because the district court didn't disregard the defendants' other equitable arguments.

> **b.    The change in case law does not support vacatur.**

The first characterization of the argument fails because a change in case law doesn't support vacatur when the cases are unrelated.

We review the denial of a motion to vacate for an abuse of discretion. *Kile v. United States*, 915 F.3d 682, 688 (10th Cir. 2019). "The denial of a 60(b)(6) motion will be reversed only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (quoting *Davis v. Kan. Dep't of Corr.*, 507 F.3d 1246, 1248 (10th Cir. 2007)). This certainty could arise when the district court errs legally, and the defendants are urging a legal error based on the change in case law.

But the defendants' argument clashes with our precedent, for we held in 1958 that a change in case law doesn't justify vacatur under Rule 60(b)(6). *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958). Granted, our 1958 holding could

- expose parties to different legal rules in related cases or

- prevent a court from correcting a ruling before it becomes final.

12

We have thus acknowledged two situations in which inflexibility could create anomalies:

1.    when the change in case law takes place in a factually related case or

2.    when the change precedes issuance of a final order.

The first anomaly could arise when the change in case law arises between decisions in related cases. For example, assume that two suits sprout from a car accident and the state supreme court clarifies state law during a gap between the suits. A refusal to consider the state supreme court's clarification of the law could create inconsistent outcomes in two suits involving the same car accident.

We addressed this possibility in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc). There a car accident led to two suits: one was filed in state court, the other in federal court. *Id.* at 721–22. State law was to govern in both cases. The federal case ended with judgment for the defendant, but then the state supreme court changed its case law to favor the plaintiffs. *Id.* The change in case law led the plaintiffs to seek vacatur under Rule 60(b)(6). We concluded that relief was justified to ensure consistency in the treatment of cases "arising out of the same transaction or occurrence." *Id.* at 723. In doing so, we distinguished our 1958 precedent because "there the decisional change [had come] in an unrelated case." *Id.*

We've also acknowledged the anomaly of disallowing vacatur when the earlier ruling hasn't become final. District courts generally retain power to revise rulings before entering a judgment. *See Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[T]he Court has recognized that a district court ordinarily has the power to modify or rescind its orders at any point prior to a final judgment in a civil case."). Revision of such rulings doesn't affect finality because the case remains ongoing. For example, before a final order, a district court can rely on a new opinion to vacate a prior order under Rule 60(b)(6). *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 697–98, 702 (10th Cir. 1989).[9] And in direct appeals, we generally apply new opinions when we issue the decision. *E.g.*, *Wilson v. Al McCord Inc.*, 858 F.2d 1469, 1478 (10th Cir. 1988) (new state

---

[9]     The FTC argues that we decided *Adams* while the case was still open. The defendants criticize this characterization on the ground that we recognized a party's right to seek relief under Rule 60(b)(6) after dismissal of a cross-appeal. We agree with the FTC because the defendants' observation bears no relevance to the difference between *Adams* and our case. There the appeal took place while the parties were disputing the scope of an upcoming arbitration. *Id.* at 697–98. The district court had not ruled on any of the claims or entered a final order.

Given the district court's unquestioned power to modify or vacate rulings before they become final, we've said in an unpublished opinion that *Adams* doesn't cast doubt on our 1958 precedent for Rule 60(b)(6) motions filed after entry of a judgment. *Sproull v. Union Tex. Prods. Corp.*, No. 90-6286, 1991 WL 184098, at *2 (10th Cir. Sept. 18, 1991) (unpublished). We agree with this explanation for the difference between *Adams* and our 1958 precedent.

14

appellate opinion); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1491 n.9 (10th Cir. 1994) (new Supreme Court opinion).

These anomalies don't exist here. The defendants weren't involved in the events giving rise to *AMG*, and the district court had entered a final judgment before the defendants moved for vacatur. In fact, more than two years passed between the district court's approval of the stipulated judgment and the defendants' request for vacatur. In the absence of these anomalies, we have explained that our precedents disallow vacatur based on a change in the case law from an unrelated case: "Absent a post-judgment change in the law in a factually related case . . . a change in the law or in the judicial view of an established rule of law does not justify relief under Rule 60(b)(6)." *Johnston v. Cigna Corp.* 14 F.3d 486, 497 (10th Cir. 1993) (quoting *Van Skiver v. United States*, 952 F.2d 1241, 1245 (10th Cir. 1991)) (cleaned up).

The defendants apparently characterize this language as dicta, but it's not. This language appears in our consideration of the plaintiffs' reliance on a change in the case law. *Id.* There we disallowed vacatur because the change hadn't arisen "out of a *Pierce*-type factually-related incident." *Id.* The quoted language was thus integral to our holding. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (rejecting a party's characterization of a prior panel's statements as dicta, reasoning that they had been essential to the decision).

15

The defendants also suggest that the Supreme Court has overruled our 1958 precedent. For this suggestion, the defendants cite *Agostini v. Felton*, 521 U.S. 203, 239 (1997). There the Supreme Court addressed a different rule (Rule 60(b)(5)). *Id.* at 238–39. In its discussion, the Court noted that "intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Id.* at 239. The defendants don't explain how this passage undercuts our precedents limiting the availability of vacatur under Rule 60(b)(6) based on new Supreme Court opinions. Indeed, after the Supreme Court decided *Agostini*, the Fourth Circuit held that *AMG*'s abrogation of the circuit's prior case law didn't justify vacatur under Rule 60(b)(6):

> "It is hardly extraordinary" when the Supreme Court arrives "at a different interpretation" of a particular issue than lower courts after a case is no longer pending.
>
> . . . .
>
> Here, the Supreme Court's novel position in *AMG* is not sufficiently extraordinary to justify vacatur under the Rule 60(b) catch-all. A conclusion that such a circumstance justifies vacatur would effectively eviscerate finality interests and open the floodgates to newly meritorious Rule 60(b)(6) motions each time the law changes.

*FTC v. Ross*, 74 F.4th 186, 194 (4th Cir. 2023) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) and citing *Agostini*, 521 U.S. at 239), *cert. pet. filed* (U.S. Oct. 18, 2023) (No. 23-405).

16

Our precedents remain good law unless the Supreme Court has "indisputably and pellucidly" abrogated them. *Vincent v. Garland*, 80 F.4th 1197, 1200, 1202 (10th Cir. 2023), *cert. pet. filed* (U.S. Dec. 26, 2023) (No. 23-683). *Agostini* doesn't indisputably and pellucidly abrogate our case law. Under that case law, new Supreme Court opinions can sometimes support vacatur under Rule 60(b)(6). *See* pp. 13–14, above. For example, new Supreme Court opinions might support vacatur when the district court hadn't issued a final judgment. *See* p. 14, above. But these circumstances aren't present here.

### c.    The district court didn't disregard the defendants' other arguments for vacatur.

The defendants contend that the district court disregarded their other arguments. We disagree. The defendants did make other arguments, but those arguments depended on the Supreme Court's new opinion in *AMG*.

The defendants point to their arguments that

- the stipulated judgment created an unfair burden,

- the FTC lacked any interest in retaining the judgment,

- *AMG*'s holding merited special consideration, and

- the facts warranted an exception to finality.

In making these arguments in district court, the defendants didn't say why they regarded the stipulated judgment as unfair. Granted, they

17

repeatedly characterized the judgment as illegal; but the alleged illegality stemmed from the change in case law. *See* pp. 5–6, above.

The defendants also denied that the FTC had an interest in retaining the judgment because "Congress did not authorize the agency" to seek equitable monetary relief. Appellants' App'x at 182. So this argument also appeared to rest on a change in the case law.[10]

In addition, the defendants point to the importance of *AMG* and the role of Rule 60(b)(6) in creating an exception to finality. These arguments rest again on the change in case law.

The district court could thus reasonably regard these arguments as part of the defendants' reliance on a change in the case law. However the arguments were characterized, the court didn't overlook them. The court instead explained that these arguments hadn't constituted "a legal or factual basis" to vacate the stipulated judgment. Appellants' App'x at 290. Given this explanation, we conclude that the district court didn't ignore the defendants' equitable arguments.

---

[10]　The defendants' appeal briefs also appear to challenge the FTC's interest in the judgment based on its illegality: "The Supreme Court in *AMG* already clarified that Congress did *not* grant the FTC the power to obtain drastic equitable monetary penalties. And agencies have no interest in defending illegal actions." Appellants' Opening Br. at 41 (emphasis in original) (citation omitted).

18

### 3.     Conclusion

For two separate reasons, we affirm the denial of the defendants' motion to vacate the stipulated judgment.

First, the defendants' appellate arguments trigger the waiver clause by challenging or contesting the validity of the stipulated judgment.

Second, the Supreme Court's issuance of *AMG* bears no factual relationship to our case. So *AMG* doesn't warrant vacatur under Rule 60(b)(6).

We thus conclude that (1) the defendants waived their appellate arguments and (2) the district court didn't abuse its discretion in denying vacatur.

No. 23-4009, *Federal Trade Commission v. Elite IT Partners, Inc. et al.*
**BRISCOE**, Circuit Judge, concurring.

I join in affirming the district court's denial of defendants' Rule 60(b)(6) motion to vacate the stipulated judgment.  The Majority Opinion clearly explains in Section 1 of the Opinion that the waiver clause set forth in the stipulated judgment applies here to bar defendants' appellate arguments.  I would rest our affirmance on waiver and would not proceed to address the merits.

1